[Civ. No. 25085.   Second Dist., Div. Two.   May 11, 1961.]

SADIE KERSHMAN, Respondent, v. PHILIP KERSHMAN, Appellant.

Brian J. Kennedy and Vincent E. Lumbleau for Appellant.

Erb, French & Picone and John R. McCann for Respondent.

FOX, P. J.—This is an action for the partition of real property. Defendant appeals from an interlocutory decree of partition adjudging him the owner in fee of an undivided 6.7 per cent interest in the property.

This action was tried together with an action for divorce in which plaintiff prevailed (*Kershman* v. *Kershman, ante,* p. 18 [13 Cal.Rptr. 288]).

Plaintiff and defendant, described in the briefs as mature persons, were married December 24, 1950, and separated October 24, 1958. At the time of the marriage plaintiff owned a parcel of improved real property located at 1630 North Genessee Street, Los Angeles; certain stocks and securities; and a mortgage on property located in Florida valued at approximately $20,500. Plaintiff was not gainfully employed. Defendant owned, at the time of the marriage, tools used in his trade valued at $2,000 and two automobiles valued at $800, one of which was encumbered for $300. Defendant was a mechanic by trade.

During the marriage it was the practice of the parties that plaintiff receive defendant's paycheck and give him five dollars per week therefrom for gasoline and spending money. From the balance plaintiff made expenditures for household items such as food, utilities, etc. Records were kept by plaintiff of her expenditures in this regard, and any of defendant's earnings that were not so spent were deposited in a bank account in his name. During the eight years that they lived together, defendant's earnings averaged less than $5,000 per year. None of plaintiff's funds appear to have been used for living expenses.

The real property that is the subject of this action was purchased by a joint tenancy deed dated August 4, 1955. It is located on Alta Street, in Santa Monica (hereafter referred to as the Alta property). The purchase price was $16,209. Defendant contributed $1,000 in cash which had accumulated in the above bank account. Plaintiff contributed $8,014 from her separate funds. It was agreed that the balance would be financed by defendant's assumption of a $7,000 mortgage which defendant was to pay out of his share of rentals and his earnings. It was contemplated that this would make their contributions equal. After the property was acquired, the parties agreed to place an improvement upon the property at a cost of $4,000, financed by a loan upon the security of plaintiff's stocks. Defendant was to reimburse plaintiff for one-half of this expenditure. The property was to be rented for $160 per month. Defendant was to receive $60 per month as his share, which he was to use, together with $10 of his earnings, to pay the mortgage instalments of $70 per month. Plaintiff was to receive the balance of $100 per month, $60 of which was to offset defendant's share, and the balance was to be applied in part toward the reduction of defendant's obligation of $2,000 as his share of the improvement. This agreement was carried out, and at the time of trial defendant's obligation with respect to the improvement had been reduced by $973, leaving a balance of $1,027.

This arrangement continued until February 15, 1959, when defendant stopped making payments. The property was not rented part of the time, and defendant apparently paid the whole $70.00 at those times out of his community earnings, for it was found that, although only 38 payments had been made (January 1956 to February 1959), defendant had expended $520 in community funds on the mortgage payments. There is testimony that defendant paid the June 1959 instalment, and also those for the first three months of 1960 (upon judicial compulsion). This appears to be the extent of defendant's contribution to the Alta property. The trial court found that his $1,000 initial payment was community property.

It was found that defendant occupied and had the exclusive use and enjoyment of the premises against the wishes of plaintiff from May 1, 1959, to the time of trial, April 7, 1960, and also that the reasonable rental value of the property is $165 per month. It appears that for at least part of this time defendant leased the property to third persons for $160 per

month and kept the proceeds. It is not clear how long it was so rented, but possibly from September to the time of trial. Plaintiff testified that she paid the mortgage instalments not met by defendant except for those of July and August of 1959, which were delinquent at the time of trial. These would appear to be four: September, October, November and December, totaling $280. Plaintiff claims in her brief to have paid the property taxes for November.

Based upon this evidence, the court found that plaintiff had a 93.3 per cent interest in the Alta property and defendant a 6.7 per cent interest.

■ Defendant's first contention is that the trial court did not have the power under the pleadings to do other than order an *equal* division of the proceeds upon the sale. It is claimed that this is an action for the partition of property held in joint tenancy, and that a joint tenant is, *ipso facto*, an owner of an undivided one-half interest. This argument is without merit. *Cosler* v. *Norwood*, 97 Cal.App.2d 665 [218 P.2d 800] was an action for partition of real property held in joint tenancy. The judgment of the trial court ordering a three fourths-one fourth division of the proceeds, according to the relative contributions of the parties, was upheld. At page 666 the opinion states: "There is no merit in plaintiff's contention that since the title to the real property was taken in the names of the parties as joint tenants defendant is estopped to claim that she has more than one-half interest in the property. Plaintiff by seeking a partition and an accounting put in issue the interest of each of the parties to the real property in question. Therefore the deed of joint tenancy was only one item of evidence to be considered by the court in connection with other probative facts produced by plaintiff and defendant." ■ Further, in *Thomasset* v. *Thomasset*, 122 Cal.App.2d 116, 133 [264 P.2d 626], it was stated that: "Property may be found to be other than that indicated by the deed when there is an oral or written agreement as to the ownership of the property, or where such understanding may be inferred from the conduct and declarations of the spouses."

■ In the case at bar, plaintiff testified as follows: "So Philip was going to put his thousand in; I was going to put eight thousand and he was going to assume the mortgage of seven thousand. Q. That would make you an equal amount; is that correct? A. Yes. Q. Did you have that discussion with him? A. Oh, yes. Q. Did you have that agreement with

him? A. Yes, I did.'' And again, following testimony concerning the $4,000 improvement, plaintiff was asked, ''Now, then, was the understanding that you were both to have an equal amount ultimately in the property?'' She answered, ''When these things were paid off.'' This testimony amply supports the implied finding that the plaintiff and defendant had agreed that their interests were not to be equal *until* defendant had paid his share, and that their interests were to represent at any given point of time the contemporaneous proportion of their respective contributions in relation to the total.

In support of his proposition that property held in joint tenancy must be divided evenly in an action for partition, plaintiff cites us to authority for the very different proposition that in an action between heirs and joint tenancy survivors, matters extraneous to the deed are inadmissible to determine the character of the property. (*Kennedy* v. *McMurray,* 169 Cal. 287 [146 P. 647, Ann.Cas. 1916D 515] ; *Hall* v. *Donnelly,* 56 Cal.App.2d 387 [132 P.2d 867].) The cited authority is clearly inapposite.

Defendant's other argument on this appeal is that the finding that the respective interests of the parties are 93.3 per cent and 6.7 per cent, upon which the judgment is based, is contrary to the evidence or without evidentiary support. For the following reasons we find merit in this contention.

It is not at all clear how the trial court arrived at these figures. It appears from the Reporter's Transcript that the contributions of the parties were totaled and plaintiff was allowed certain credits (see *infra*). These were presumably for defendant's occupancy, the rent he received and kept for himself, the mortgage payments made by plaintiff, and the $1,027 which defendant still owed with respect to the $4,000 improvement.[1] For the purposes of determining the relative contributions, an $18,000 base was used. It does not appear why this figure was chosen, except that the transcript reveals testimony of both parties that the property was worth about $23,000 at the time of trial and testimony of plaintiff that the mortgage balance was, so far as she knew, $5,000 at that time. There was no expert testimony as to the value of the house nor was there documentary evidence of the balance of the mortgage.

---

[1]Prayer was made for the $1,027 item, among others, in the complaint.

At the end of the trial, following the argument of counsel, there was some colloquy which sheds light upon, and at the same time obscures, the basis of decision: "THE COURT: Can you gentlemen settle how much she is going to pay for his interest? MR. PICONE: My computation would be $18,000 net, and then I figured the ratio of his contributions to her contributions and it is 6.7 per cent; multiply that by the eighteen thousand we have left is $1206. THE COURT: Well, he certainly has made very little contribution, if any, to the Alta property as I see it. If you gentlemen can amicably work that out, we can take care of this partition business. Otherwise the Court will just have to arbitrarily make a finding on it. We will take a five-minute recess while you talk that over. (Short recess.) MR. STURZENACKER: We can't arrive at anything, your Honor, as far as that is concerned. He makes an offer of $1200. Here is a man that has given this woman a little over $50,000 in ten [eight] years and he comes out with $1200. THE COURT: You had better tell him to take $1200 because I won't give him that much. MR. STURZENACKER: I understand that is Mr. Picone's offer. MR. PICONE: That is my computation. I am just trying to give the man every benefit. MR. STURZENACKER: Submitted."

Giving plaintiff every benefit on the computation, we have the following with respect to defendant's contributions: $500 as one half of his $1,000 initial contribution, considered by the trial court as community; $260 as one-half of that part of the mortgage instalments found to have been paid out of defendant's earnings; $2,280 representing approximately 38 mortgage instalments of which $60 per month was separate property derived from defendant's share of the rents; and $973 which the parties agree was paid by defendant to plaintiff in reduction of his obligation on the $4,000 improvement. These figures total $4,013 (the four mortgage payments after separation not included). Somehow this figure was reduced by approximately $3,000 to $1,206. Neither the findings nor the transcript reveal the process.

It is unnecessary for us to hypothesize as to which of the items were charged against defendant's interest for the purpose of determining whether each was a proper charge. We have determined that the very process by which the percentage points were determined was erroneous. As stated above, simple arithmetic demonstrates that defendant's contribution totaled at least $4,013, exclusive of the last four mortgage payments made by him. Using a base as high as $20,209 (the purchase

price plus the cost of the improvement) it is apparent that defendant contributed nearly 20 per cent of the total. The 6.7 per cent or $1,206 figure mentioned above could only have been arrived at by deducting all or some of the above of plaintiff's claims against defendant.[2] To deduct these amounts from defendant's contribution is to deprive him of his proper share of the appreciated value of the property.[3]

That this approach is incorrect can be demonstrated by the following examples. A and B purchase a home for $20,000. A pays $16,000 and B pays $4,000, or 20 per cent, and it is agreed that their respective ownership interests are to be determined by the amounts of their contributions. Two years later they sell the house for $25,000. B receives 20 per cent of the total proceeds, or 20 per cent of $20,000 plus 20 per cent of $5,000, the increment attributable to appreciation. That his share of the appreciation is determined by his ownership interest is axiomatic, and founded upon the relative risks undertaken by the parties. Thus A receives $20,000 and B $5,000. Suppose, however, that B had resided on the premises and agreed to pay rent of $2,000 to A. He would merely pay A $2,000 of his share of the proceeds, retaining $3,000. But if the procedure followed by the trial court were adopted by A and B, B would subtract the $2,000 obligation from his initial contribution of $4,000, arriving at $2,000 or 10 per cent of the total initial contribution. Then when the property was sold B would get 10 per cent of the selling price or $2,500. This is $500 less than he receives by the other method. This $500 difference is achieved because B receives only 10 per cent of the appreciation increment of $5,000 ($500) instead of his true ownership interest of 20 per cent ($1,000).

Such a result cannot be condoned. The proper approach would be to first determine the respective ownership interests of the parties whether equal or otherwise. Upon sale of the property there should be a determination of the share of each in the net proceeds according to those interests. Then any claims that one party may have against the other should

---

[2]The $1,027 which defendant still owes on the improvement appears to have been charged against him twice, in that it was apparently included in the total of plaintiff's contribution and deducted from that of defendant.

[3]Assuming that the parties had agreed that their ownership interests would be a reflection of their respective contributions, as the evidence demonstrates.

be deducted from the share of the party to be charged and that of the other party should be increased accordingly. (See *Demetris* v. *Demetris*, 125 Cal.App.2d 440 [270 P.2d 891].) The judgment is reversed.

Ashburn, J., and McMurray, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.