**134 Nev., Advance Opinion 80**

IN THE SUPREME COURT OF THE STATE OF NEVADA

ELIZABETH C. HOWARD, AN
INDIVIDUAL,
Appellant,
vs.
SHAUGHNAN L. HUGHES,
Respondent.

No. 72685



FILED

OCT 04 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

        Appeal from a district court order in an action to partition real property.   Tenth Judicial District Court, Churchill County; Thomas L. Stockard, Judge.

        *Affirmed.*

Kozak & Associates, LLC, and Charles R. Kozak, Reno,
for Appellant.

Allison MacKenzie, Ltd., and Justin M. Townsend, Carson City,
for Respondent.

_____

BEFORE PICKERING, GIBBONS and HARDESTY, JJ.

*OPINION*

By the Court, GIBBONS, J.:

        In this proceeding, we are asked to clarify the property interest presumptions outlined in *Sack v. Tomlin*, 110 Nev. 204, 871 P.2d 298 (1994), and *Langevin v. York*, 111 Nev. 1481, 907 P.2d 981 (1995).   Under *Sack*, cotenants are presumed to equally share property, "unless circumstances indicate otherwise." *Sack*, 110 Nev. at 213, 871 P.2d at 304.   Additionally,

the presumption of equal shares may be rebutted through unequal contributions to property by unrelated cotenants who lack donative intent. *Id.* If successfully rebutted, fractional shares are based on the amount contributed by each party. *Id. Langevin* purportedly applied the *Sack* presumptions to joint tenants, but it divided property in proportion to the amount contributed by each party without clearly rebutting the presumption of equal ownership. *Langevin*, 111 Nev. at 1485-86, 907 P.2d at 984. We take this opportunity to clarify that the presumptions from *Sack* concerning tenants in common apply to joint tenants. As such, prior to dividing fractional shares held by cotenants, the initial presumption of equal ownership must be successfully rebutted. We therefore hold that because Hughes rebutted the secondary presumption by presenting substantial evidence of Howard's donative intent, Howard and Hughes were joint tenants with equal ownership interests in the property. Accordingly, we affirm the decision of the district court.

## FACTS AND PROCEDURAL HISTORY

Appellant Elizabeth Howard and respondent Shaughnan Hughes engaged in a romantic relationship for many years, but were never married. Approximately one year into the relationship, they relocated to Fallon, Nevada, with Hughes' two daughters. After leasing property in Fallon for a few years, the couple jointly applied for credit in anticipation of purchasing a home. However, in late 2011 or early 2012, Howard obtained a third-party settlement award and used the proceeds from the settlement to purchase the property subject to this dispute. Three days after the purchase, Howard executed a quitclaim deed naming herself and Hughes as joint tenants. Howard paid the entire $67,000 purchase price of the property, but Hughes paid the transfer property taxes.

Howard, Hughes, and Hughes' daughters moved into the property in late 2012. The property is approximately 11.09 acres and, at the time of purchase, consisted of a single-family residence and an airplane hangar. Prior to their purchase, the former owners used the property as a ranch and to store disabled cars. At trial, Hughes testified that he removed substantial debris from the property prior to the move in. Moreover, trial testimony revealed that over the course of three years, Hughes' labor contributions included, but are not limited to: erecting a fence around 4.5 acres of the property, moving the driveway, installing a new entrance and hang gate, reinforcing the hanger, installing a chicken coop and poultry house, excavation, and grading. Much of this work included excavation by hand and preventative installations and maintenance to reinforce dilapidated areas. Hughes also leveled and graded the property with a tractor purchased by his father, and when the tractor became overburdened, Hughes hired a third-party contractor to complete the remaining work. Additionally, the couple erected a mother-in-law quarters for Howard's mother and a detached garage as a work space for Hughes. The district court found that throughout the three years, Howard contributed in excess of $100,000 to the property, while Hughes contributed approximately $20,000. Additionally, the value of the property increased from $67,000 to $225,000 during that time.

In March 2015, Howard locked Hughes out of the property, leading Hughes to file a complaint to partition the property under NRS Chapter 39. A bench trial was conducted in February 2017, wherein Hughes, Hughes' father, and one of Hughes' daughters testified for Hughes, while Howard alone testified on her behalf. Neither party was able to articulate, with any degree of certainty, how much time or money they had spent on the property. Additionally, Howard's only defense as to the

3

execution and recording of the quitclaim deed was that she did not remember any of it and had "blank spots" in her memory. The district court concluded that Howard and Hughes were joint tenants with equal ownership interests in the property and ordered Howard to either buy out Hughes' interest, or sell the property and equally share in the proceeds.

## DISCUSSION

### Howard and Hughes are entitled to equal shares of the property

This case concerns the partition of real property under NRS Chapter 39. NRS 39.010 provides that any person holding title to real property as a joint tenant may bring an action for partition of said real property according to the rights of the persons holding title. It is undisputed that Howard and Hughes hold title to the property as joint tenants. This court is asked whether Howard and Hughes, as joint tenants, own the property equally, or whether the circumstances indicate that equal ownership is inappropriate. The district court, applying *Sack v. Tomlin*, 110 Nev. 204, 871 P.2d 298 (1994), and *Langevin v. York*, 111 Nev. 1481, 907 P.2d 981 (1995), held that the parties were entitled to equal shares of the property based on substantial evidence of Howard's donative intent. Howard appeals, arguing that because *Langevin* made no mention of donative intent, this step was dispelled from our analysis.[1]

### Standard of review

This court reviews a district court's interpretation of caselaw de novo. *LVMPD v. Blackjack Bonding*, 131 Nev. 80, 85, 343 P.3d 608, 612 (2015). However, "where the trial court, sitting without a jury, makes a determination predicated upon conflicting evidence, that determination will

---

[1]Howard also argues that Hughes failed to present substantial evidence of his contributions to the property. However, following a review of the record, we find this argument lacks merit.

Supreme Court
OF
Nevada

(O) 1947A

not be disturbed on appeal where supported by substantial evidence." *Trident Constr. Corp. v. W. Elec. Inc.*, 105 Nev. 423, 427, 776 P.2d 1239, 1242 (1989) (internal quotation marks omitted). "Substantial evidence is that which a reasonable mind [can] accept as [sufficient] to support a conclusion." *Dynamic Transit Co. v. Trans Pac. Ventures Inc.*, 128 Nev. 755, 761, 291 P.3d 114, 118 (2012) (internal quotation marks omitted).

*Langevin did not alter the Sack presumptions*

*Sack v. Tomlin* concerned unmarried tenants in common who unequally contributed to the purchase price of real property. 110 Nev. at 208, 871 P.2d at 301. Following separation and sale of the property, the parties disputed how to distribute the proceeds. *Id.* The *Sack* court held that "[t]he fractional shares held by tenants in common are usually equal and are presumed to be equal unless circumstances indicate otherwise." *Id.* at 213, 871 P.2d at 304. However, the court further held that this presumption can be rebutted where cotenants "are not related and show no donative intent." *Id.* Where the presumption is successfully rebutted, the proceeds upon sale are to be divided "in proportion to the amount contributed by each to the purchase price." *Id.* at 210, 871 P.2d at 303 (quoting *Williams v. Monzingo*, 16 N.W.2d 619, 622-23 (Iowa 1944)). Accordingly, under *Sack*, it is presumed tenants in common own property equally, unless successfully rebutted through lack of familial relationship or lack of donative intent, and if successfully rebutted, ownership interest is based on the amount contributed by each party. *See id.* at 210, 213, 871 P.2d at 303, 304.

*Langevin v. York*, issued one year after *Sack*, concerned joint tenants rather than tenants in common. 111 Nev. at 1485, 907 P.2d at 983. However, the court found this distinction inconsequential and considered *Sack* to be controlling law, thus extending the *Sack* presumptions to joint

tenants. *Id.* *Langevin* concerned four properties held by unmarried joint tenants, Norman and Laurie. *Id.* at 1481-82, 907 P.2d at 981-82. This court noted that the relationship between Norman and Laurie was unclear, "Norman paid for all the property acquired during the relationship and paid all the bills," and "Norman presented substantial, unrefuted evidence regarding his contribution." *Id.* at 1482, 1484, 907 P.2d at 981-82, 983. The court also noted, "Laurie presented no evidence concerning the issue of contribution." *Id.* at 1484, 907 P.2d at 983. Ultimately, the *Langevin* court divided the property in proportion to each party's contributions to the purchase price, thereby awarding Norman two of the parcels in full as the sole purchaser and remanding for the remaining two parcels to be divided based on Norman and Laurie's respective contributions. *Id.* at 1485-86, 907 P.2d at 984.

Howard asserts that under *Langevin*, unmarried joint tenants share ownership in real property in proportion to the amount each contributed to the purchase price of the property, and thus, she should be awarded the property in full. We disagree and conclude that *Langevin* did not overrule *Sack*, particularly because *Langevin* noted that *Sack* was controlling law. *Langevin*, 111 Nev. at 1485, 907 P.2d at 983. As such, the initial presumption that cotenants share equally must first be successfully rebutted through evidence of lack of relatedness or donative intent, prior to the court dividing the property or proceeds in proportion to each party's contributions. *See id.*; *Sack*, 110 Nev. at 213, 871 P.2d at 304.

*Hughes presented overwhelming evidence of Howard's donative intent, thereby demonstrating that the parties intended to share the property equally*

The district court properly applied the presumptions laid out in *Sack* and *Langevin*. First, because Howard and Hughes own the property as joint tenants, the district court began with the presumption that they

share the property equally. The district court then found that Howard rebutted the initial presumption of equal ownership when she paid the entire purchase price of the property. Having rebutted the first presumption, Howard was presumed to be the full owner, and the burden shifted to Hughes to prove either that he and Howard are related, or that Howard possessed sufficient donative intent. In that vein, the district court went on to conclude that Hughes provided "clear and convincing evidence of Ms. Howard's donative intent at the time of the transfer—thereby rebutting the secondary presumption." Specifically, the district court found that Howard intended to gift Hughes an equal share as a joint tenant when she executed the quitclaim deed.

"Determining a donor's donative intent and beliefs is a question for the fact-finder . . . ." *In re Irrevocable Tr. Agreement of 1979*, 130 Nev. 597, 608, 331 P.3d 881, 888 (2014). "In Nevada, a valid . . . donative transfer requires a donor's intent to voluntarily make a present transfer of property to a donee without consideration, the donor's actual or constructive delivery of the gift to the donee, and the donee's acceptance of the gift." *Id.* at 603, 331 P.3d at 885. Further, "[w]here an individual obtains possession of property pursuant to a written agreement establishing a joint tenancy, the law generally presumes that such agreement is conclusive, and a donative intent is presumed on the part of the predeceasing tenant." 48A C.J.S. *Joint Tenancy* § 10 n.8 (2014).

Hughes testified that he and Howard jointly searched for property in Fallon and that both sought financing for said property, but they altered their plan when Howard obtained a third-party settlement award. Additionally, at trial it was revealed that the parties frequently discussed putting both of their names on the deed and that they "ultimately went to the County Recorder's office together to execute the quitclaim deed."

Furthermore, Hughes testified that when they executed the quitclaim deed, Howard stated that Hughes had to pay the $237 transfer tax because she had "already paid . . . her half." Hughes also testified that Howard joked, "when was the last time you paid $274 for a $35,000 coin." Moreover, Hughes and his three witnesses testified as to the relationship between Howard and Hughes and Hughes' contributions to the property, while Howard alone testified on her own behalf and stated merely that she had "a lot of blank spots" concerning the execution of the quitclaim deed and the house itself. The district court found Howard's testimony not credible and stated that "Mr. Hughes presented overwhelming and largely uncontroverted evidence regarding Ms. Howard's donative intent." We agree and conclude that nothing in Howard's briefs, nor the record, indicate otherwise. We therefore hold that the district court correctly interpreted and applied the presumptions from *Sack* and *Langevin,* and that Hughes presented sufficient evidence of Howard's donative intent at trial, thereby rebutting the secondary presumption that the parties did not own the property equally. Accordingly, we affirm the judgment of the district court.

_____, J.
Gibbons

We concur:

_____, J.
Pickering

_____, J.
Hardesty

SUPREME COURT
OF
NEVADA

(O) 1947A