# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49108

|  |  |  |
|---|---|---|
| KRYSTAL K. DEMONEY-HENDRICKSON, as Personal Representative of the Estate of Cynthia K. Juker, | ) ) ) ) | |
| Plaintiff-Counterdefendant-Respondent, | ) ) | Boise, November 2022 Term |
| v. | ) ) | Opinion filed: March 30, 2023 |
| REDGINALD R. LARSEN, an individual, | ) ) | Melanie Gagnepain, Clerk |
| Defendant-Counterclaimant-Appellant, | ) ) | |
| and | ) ) | |
| THE ESTATE OF CYNTHIA K. JUKER, | ) ) | |
| Third Party Defendant-Respondent. | ) ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Eric J. Wildman, District Judge.

The decision of the district court is <u>reversed</u>, and the case is <u>remanded</u>.

Wright Brothers Law Office, PLLC, Twin Falls, for Appellant. Kyle E. Bastian argued.

Vaughn Fisher and Christopher Brown, Boise, for Respondents. Vaughn Fisher argued.

———————————————

ZAHN, Justice.

This case concerns an action for the partition of real property. Redginald Larsen appeals from the district court's denial of his motion for reconsideration following its grant of summary judgment brought by Krystal Demoney-Hendrickson and the Estate of Cynthia K. Juker. For the reasons stated below, we reverse the district court's grant of summary judgment and remand the case for further proceedings.

1

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.  Factual Background

In 1994, Larsen, who was then single, purchased unimproved property in Twin Falls County (the "Rock Garden Property") as the sole owner. In 2014, Larsen and Cynthia Juker entered into a romantic relationship. Despite participating in an unofficial ceremony resembling a wedding in 2018, the two were never legally married. Shortly after their relationship began, Larsen and Juker moved into a home owned by Juker (the "Wrangler Property").

In August 2019, Larsen and Juker entered into a building contract to construct a home on the Rock Garden Property. To procure financing for the project, Larsen and Juker submitted a joint loan application that First Federal Savings Bank of Twin Falls approved. To qualify for the loan, First Federal required Larsen to execute a quitclaim deed for the Rock Garden Property that listed himself and Juker as grantees. The deed reads,

> **Reginald** [sic] **R. Larsen, a single man** Grantor(s) do(es) hereby convey, release, remise and forever quitclaim unto **Redginald R. Larsen and Cynthia Kay Juker, Husband and Wife** Grantee(s) whose address is: **3579 Rock Garden Lane North Kimberly, ID 83341** (Primary Residence) the following described premises, to-wit: [reference to attached legal description of Rock Garden Property.]

(Capitalization altered; bold in original.) The deed was executed on October 4, 2019.

About a month later, Juker unexpectedly passed away. Her daughter, Krystal Demoney-Hendrickson, was appointed personal representative of Juker's estate (collectively referred to as "the Estate"). At the time of Juker's passing, the home on the Rock Garden Property was still under construction. Larsen continued living on the Wrangler Property until construction on the Rock Garden Property finished in April 2020, after which he moved into the new home. Initially, the relationship between Larsen and Demoney-Hendrickson was amicable following Juker's passing, but things began to unravel shortly after Larsen moved into the new home.

According to Larsen, he and Juker entered into two oral agreements around the time they sought financing for the home construction. Larsen explains that, under these agreements, Juker was to sell the Wrangler Property and use the proceeds to pay down the First Federal loan. In the meantime, Larsen agreed he would be solely responsible for financing the home construction out of his separate funds. In accordance with this agreement, Larsen states he reimbursed Juker for any expenses she incurred related to the home construction until the Wrangler Property could be sold.

2

In contrast, the Estate maintains Juker died intestate and never indicated her wishes for what was to become of her personal and real property in the event of her death. The Estate also disputes whether Larsen was solely responsible for funding the Rock Garden Property construction. Once construction was completed, Larsen occupied the Rock Garden Property. The Estate sold the Wrangler Property, but none of the proceeds from that sale were applied toward the First Federal loan.

Friction between the parties over ownership of the Rock Garden Property ultimately led the Estate to sue Larsen in the summer of 2020. The Estate asserted causes of action for partition by sale and conversion, and later added claims for ouster and unjust enrichment. Larsen asserted a counterclaim seeking a declaratory judgment that he owned 100% of the Rock Garden Property.

## B. Procedural Background

Both the Estate and Larsen moved for summary judgment on their claims for partition by sale and declaratory judgment. The Estate argued that it owned 50% of the Rock Garden Property by virtue of the warranty deed to Juker. Larsen argued that he owned 100% of the Rock Garden Property by virtue of the parties' agreement and because he reimbursed Juker for all expenses she paid for the property.

The district court granted the Estate's motion and denied Larsen's motion. The district court found the deed "to be clear, unambiguous, and controlling" and concluded it need not consider any evidence beyond the language of the deed to determine ownership of the Rock Garden Property. Relying exclusively on the deed, the district court found that Larsen and the Estate each owned an undivided, one-half interest in the Rock Garden Property as a matter of law. Following its determination of the parties' respective interests, the district court concluded the Rock Garden Property must be partitioned by sale as a matter of law. The district court also found that the Rock Garden Property consisted of 5.05 acres and contained a single residence and that it would not be possible to physically partition the property without great prejudice to the parties. The district court therefore ordered the partition of the property by sale.

Larsen filed a motion for reconsideration of the district court's summary judgment order. Larsen argued that the district court's decision was in error because extrinsic evidence is admissible in a partition action to establish the parties' ownership interests and, therefore, the district court erred in relying exclusively on the language of the deed to determine the parties'

3

respective interests in the property. Larsen argued that the district court should have also considered the parties' respective contributions to the property when making its decision.

The district court denied Larsen's motion, largely relying on the same line of reasoning from its original order. However, the district court did clarify that its original order made only two determinations: (1) that Larsen and the Estate each owned an undivided, one-half interest in the Rock Garden Property, and (2) that partition by sale must occur as a matter of law because partition in kind would result in great prejudice. The district court stated that "[w]ho paid what with respect to the construction of the residence is disputed and thus presents a genuine issue of material fact not ripe for summary judgment." Thus, the district court concluded that issues related to contributions and expenditures would be resolved when the proceeds from the sale of the Rock Garden Property were divided.

Following the denial of his motion for reconsideration, Larsen moved for permission from the district court to appeal its order under Idaho Appellate Rule 12. The district court denied the motion. Larsen then moved this Court for permission to appeal the district court's denial of his motion to reconsider, which this Court granted.

## II.    ISSUES ON APPEAL

1. Did the district court err in granting summary judgment to the Estate?
2. Is either party entitled to attorney fees on appeal?

## III.    STANDARD OF REVIEW

The parties dispute the appropriate standard of review for this appeal. Larsen argues this Court utilizes the same standard of review used by the district court in deciding the motion for reconsideration. Since the district court was reconsidering its order on the cross-motions for summary judgment, Larsen asserts this Court should apply the summary judgment standard. The Estate asserts that a clear error standard of review applies since the district court's order pertained to partitioning real estate.

"[W]hen reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). Thus, "when reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Fragnella*, 153 Idaho at 276, 281 P.3d at 113. "If there

4

is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Neeser v. Inland Empire Paper Co.*, 170 Idaho 692, 696, 516 P.3d 562, 566 (2022) (internal quotations and citations omitted).

Larsen has appealed the district court's order denying his motion for reconsideration. Therefore, we apply the summary judgment standard in our review of the district court's denial of Larsen's motion.

## IV. ANALYSIS

### A. The district court erred in granting the Estate's motion for summary judgment.

Larsen asserts that the district court erred by not considering extrinsic evidence to determine his and the Estate's respective ownership interests in the Rock Garden Property. He argues that a presumption arises in partition actions that can be rebutted through extrinsic evidence and asserts that this Court's decision in *Wilson v. Mocabee*, 167 Idaho 59, 467 P.3d 423 (2020), supports his position. Thus, Larsen maintains that the district court erred by relying exclusively on the language of the deed to determine his and the Estate's respective interests in the Rock Garden Property. The Estate maintains the district court applied the correct standard.

The district court applied the standard from *Hoch v. Vance*, 155 Idaho 636, 315 P.3d 824 (2013), to determine the parties' respective interests under the quitclaim deed. Under this standard, the district court concluded it should not consider extrinsic evidence because the deed was unambiguous. The district court determined that this Court's decision in *Wilson* was distinguishable and that the quitclaim deed established that Larsen and the Estate each owned an undivided, one-half interest in the Rock Garden Property.

1. <u>Idaho's partition statutes provide a three-step process for analyzing partition claims.</u>

Idaho has a statutory framework permitting co-owners to bring an action to partition real property. *See* I.C. § 6-501. Three statutes address the analytical steps that a district court must follow when deciding a partition action. Idaho Code section 6-501 provides:

> When several cotenants hold and are in possession of real property as parceners, joint tenants or tenants in common, in which one (1) or more of them have an estate of inheritance, or for life or lives, or for years, an action may be brought by one (1) or more of such persons for a partition thereof, according to the respective rights of the persons interested therein, and for a sale of such property, or a part thereof, if it appears that a partition cannot be made without great prejudice to the owners.

Additionally, section 6-508 states:

The rights of the several parties, plaintiff as well as defendant, may be put in issue, tried and determined in such action; and when a sale of the premises is necessary, the title must be ascertained by proof to the satisfaction of the court before the judgment of sale can be made[.]

Finally, section 6-512 provides:

If it be alleged in the complaint and established by evidence, or if it appear by the evidence without such allegation in the complaint, to the satisfaction of the court, that the property, or any part of it, is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale thereof. Otherwise, upon the requisite proofs being made, it must order a partition according to the respective rights of the parties as ascertained by the court[.]

Taken together, these statutes set forth a sequential framework for partition actions.

The first step is for the district court to determine whether the parties to the action possess some interest in the property at issue. *See* I.C. § 6-501. The second step is to ascertain the "respective rights of the persons interested" in the subject property. *Id.* In other words, the district court must determine the parties' respective ownership interests in the subject property. *Id.*; I.C. § 6-508. The third step is to determine the most appropriate method of partition: a partition in kind or a partition by sale. *See* I.C. §§ 6-501, 6-508. Critically, "when a sale of the premises is necessary, the title must be ascertained by proof to the satisfaction of the court *before the judgment of sale can be made*[.]" I.C. § 6-508 (emphasis added).

2. <u>The district court erred in refusing to consider extrinsic evidence when determining the parties' respective ownership interests in the Rock Garden Property.</u>

Here, the district court erred when it conflated the first and second steps in the partition framework. As the district court correctly noted, "when the language of a deed is unambiguous, the intention of the parties is a matter of law ascertained from the deed's plain language without the aid of extrinsic evidence." *Hoch*, 155 Idaho at 639, 315 P.3d at 827 (citing *Machado v. Ryan*, 153 Idaho 212, 218, 280 P.3d 715, 721 (2012)). The deed here states:

**Reginald** [sic] **R. Larsen, a single man** Grantor(s) do(es) hereby convey, release, remise and forever quitclaim unto **Redginald R. Larsen and Cynthia Kay Juker, Husband and Wife** Grantee(s) whose address is: **3579 Rock Garden Lane North Kimberly, ID 83341** (Primary Residence) the following described premises, to-wit: [reference to attached legal description of the Rock Garden Property.]

(Capitalization altered; bold in original.) The district court correctly concluded that the plain language of the deed shows that Larsen conveyed an interest in the Rock Garden Property to Juker. The district court, therefore, properly concluded that Juker possessed some interest in the Rock Garden Property.

6

This only resolves the first step, however. After determining that Larsen conveyed an interest to Juker, the district court needed to advance to the second step and determine how much of an interest Larsen conveyed. Here, the district court assumed that Larsen and Juker took ownership in equal shares because there were only two names on the deed, and the deed did not specify their respective interests in the property. The district court, however, erred in making this assumption.

Idaho law provides that every interest in real estate is presumed to be a tenancy in common unless the deed expressly provides otherwise. I.C. § 55-508. The face of the quitclaim deed in this case does not indicate that the parties intended anything other than a tenancy in common. As a result, because Larsen and Juker took as tenants in common, they could have taken unequal ownership interests in the Rock Garden Property. *See* 4 Thompson on Real Property, Thomas Editions § 32.06 (David A. Thomas ed. 2017) ("Because unity of interest is not required, it is not necessary that tenants in common have equal shares."). *See also* 20 Am. Jur. 2d *Cotenancy and Joint Ownership* § 31 ("A tenancy in common is a form of ownership in which each cotenant owns a separate fractional share of undivided property. The property may be owned in equal or unequal undivided shares. . . .").

This Court has not yet addressed how a trial court should determine the respective ownership rights of the parties to a partition action. As discussed above, in the event of a cotenancy in common, the owners may own in equal or unequal shares. Unless a deed expressly identifies those respective interests on its face, it only indicates that *an* interest has been granted, but not what percentage of interest has been granted. Therefore, we turn to the question of how to determine the respective ownership interests of the parties in a situation such as this.

Larsen asserts that the district court erred by not looking beyond the plain language of the deed to determine the parties' respective ownership interests. *See Barrett v. Barrett*, 149 Idaho 21, 232 P.3d 799 (2010); *Garrett v. Garrett*, 154 Idaho 788, 302 P.3d 1061 (2013); *Kawamura v. Kawamura*, 159 Idaho 1, 355 P.3d 630 (2015). Larsen argues that Idaho law permits a district court to consider extrinsic evidence when a deed is executed in the course of obtaining financing. For example, in *Barrett* we held that "evidence beyond the deed itself [can] be introduced to determine the character of property even where that determination might differ from the language of the deed." *Barrett*, 149 Idaho at 24, 232 P.3d at 802. In so holding, we acknowledged that "[t]his Court

has previously allowed courts to look to a variety of factors in determining the character of property." *Id. See also Kawamura*, 159 Idaho at 4–5, 355 P.3d at 633–34.

We conclude that *Barrett* and *Kawamura* are distinguishable from the situation before us in this case. Those cases concerned the determination of whether real property at issue in a divorce action was separate or community property. *See Barrett*, 149 Idaho at 23, 232 P.3d at 801 ("[T]he inquiry is whether the character of [the relevant] property changed during the marriage."); *Kawamura*, 159 Idaho at 4–5, 355 P.3d at 633–34 (concluding that property at issue was community property). Here, we are not reviewing a determination of separate or community property in a divorce action. Instead, we are reviewing the respective ownership interests of Larsen and Juker—an unmarried couple—in a partition action.

Larsen argues that our decision in *Garrett* shows that *Barrett* and *Kawamura* apply in partition actions. *Garrett* was a partition action that involved two issues: (1) whether separate property that one spouse brought into the marriage was transmuted to community property during the course of a marriage; and (2) whether the husband's deed conveying that property to his son was validly delivered. *Garrett*, 154 Idaho at 790, 302 P.3d at 1063. The district court concluded the property was transmuted into community property and cited to *Barrett* for the proposition that it was free to consider extrinsic evidence to determine the character of the property. *Id.* The district court also found there was no valid delivery of the deed. *Id.* at 790–91, 302 P.3d at 1063–64. On appeal, this Court did not address the transmutation determination and instead affirmed the district court on its alternative holding that the deed had not been validly delivered. *Id.* at 791, 302 P.3d at 1064. Delivery is not an issue here; thus, *Garrett* is inapt.

Larsen also contends that this Court addressed the consideration of extrinsic evidence in a partition action in *Wilson*. There, Mocabee and Wilson, an unmarried couple, had been cohabitating for many years when Wilson received a large inheritance. *Wilson*, 167 Idaho at 62, 467 P.3d at 426. Wilson used her inheritance to purchase a home and instructed the title company to include Mocabee's name on the deed. *Id.* Wilson and Mocabee eventually split up, and Wilson filed a complaint against Mocabee for quiet title, unlawful detainer, and partition. *Id.* The case proceeded to a bench trial on the partition claim. *Id.* at 63, 467 P.3d at 427.

Prior to trial, Mocabee filed a motion in limine seeking to exclude any evidence demonstrating Wilson did not intend to give him a 50% ownership interest in the home. *Id.* In denying the motion, the district court noted that partition actions are different in kind from an

action on a deed, making it necessary to look at matters outside the deed. *Id.* at 63–64, 467 P.3d at 427–28. The parties stipulated to have the following presumption govern the standard of proof at trial: "there is a presumption that where we have two people on a deed that they are co-tenants owning [an] undivided 50 percent interest, that that presumption is rebuttable, [and] that we will look at a contribution." *Id.* at 64, 467 P.3d at 428. The district court ultimately concluded that Wilson owned a 100% interest in the home because she contributed 100% of the purchase price, and the evidence did not establish she intended to give Mocabee any interest. *Id.* Given this outcome, the district court held that it was unnecessary to partition the property. *Id.* Mocabee then appealed to this Court. *Id.*

On appeal, this Court found that Mocabee stipulated to the presumption and, therefore, could not assert the district court erred in applying the presumption. *Id.* at 66–67, 467 P.3d at 430–31. This Court went on to draw the same distinction that the district court did: "this is not a case about construing a deed; it is an action to determine, when the deed was silent on its face, whether Wilson intended to give Mocabee any interest in the home at all." *Id.* at 67, 467 P.3d at 431. In other words, "this was not an action on the deed, but a partition action to determine the ownership interests of each party." *Id.* This Court ultimately affirmed the district court under the invited error doctrine. *Id.* at 67–70, 467 P.3d at 431–34.

Here, the district court recognized, and we agree, that *Wilson* is not controlling given the unique facts of that case. Unlike the parties in *Wilson*, Larsen and the Estate did not stipulate to a legal standard to determine their respective ownership interests in the property. With that said, in *Wilson*, this Court recognized generally applicable principles that arise under Idaho's partition statutes. As we noted in *Wilson*, there is a widely accepted presumption that arises in partition actions: "[w]here two or more persons take as tenants in common under an instrument silent as to their respective shares, there is a presumption that their shares are equal." 167 Idaho at 65, 467 P.3d at 429. *See also, e.g.*, *Gallagher v. Townsend*, 443 P.3d 847, 850–51 (Wyo. 2019). We further stated that "[t]his is the presumption that arises under Idaho's partition statute." *Wilson*, 167 Idaho at 65, 467 P.3d at 429.

Given the different factual circumstances of this case, we take this opportunity to reiterate that when an instrument is silent as to the parties' respective interests in property sought to be partitioned, a presumption of equal shares applies. We are not alone in applying this presumption. *See, e.g.*, *Hofstad v. Christie*, 240 P.3d 816, 818–19 (Wyo. 2010) (citation omitted) ("It is widely

9

accepted that, 'if the instrument does not specify the shares of each co-tenant, it will be presumed that they take equal, undivided interests.'"); *Howard v. Hughes*, 427 P.3d 1045, 1048 (Nev. 2018); *In re Estate of Dern Family Tr.*, 928 P.2d 123, 131 (Mont. 1996); *D.M. v. D.A.*, 885 P.2d 94, 96–97 (Alaska 1994); *Cummings v. Anderson*, 614 P.2d 1283, 1287 (Wash. 1980).

The question then arises whether the presumption is rebuttable or irrebuttable. Our sister states have recognized that the presumption of equal shares may be rebutted with evidence showing that the parties intended to create unequal shares. *E.g.*, *Hofstad*, 240 P.3d at 818–19; *Howard*, 427 P.3d at 1048; *In re Estate of Dern Family Tr.*, 928 P.2d at 131–32; *D.M.*, 885 P.2d at 97–98; *Cummings*, 614 P.2d at 1287. Some jurisdictions have limited the evidence that can be introduced to rebut this presumption. *See, e.g.*, *Gallagher*, 443 P.3d at 850 (noting that permissible extrinsic evidence includes "proof that the co-tenants contributed unequal amounts toward the purchase price of the property, and there is neither a family relationship among the co-tenants nor any evidence of donative intent on the part of those who contributed more than their pro rata amounts toward the purchase price."); *Howard*, 427 P.3d at 1048 (holding that the presumption of equal shares may be rebutted "through evidence of lack of relatedness or donative intent").

We agree that the presumption should be a rebuttable one and hold that the presumption of equal shares may be rebutted with evidence that the parties intended to create unequal shares. We, however, see no reason to limit the types of evidence that may be considered in this analysis. We recently determined that in partition actions, our district courts should consider the totality of the circumstances when determining whether physical partition would result in great prejudice to the parties. *Nordgaarden v. Kiebert*, No. 48919, 2023 WL 2618459, at *7 (Mar. 24, 2023). We see no reason that our district courts should not likewise examine the totality of the circumstances to determine the respective ownership interests of the parties. The presumption of equal shares may be rebutted with a showing, by a preponderance of the evidence, that the parties intended to share unequally in the property. The party opposing equal ownership bears this burden. Our district courts are free to consider extrinsic evidence in conducting this analysis.

Larsen invites us to adopt a second presumption, a presumption of proportional shares, that some jurisdictions apply once the initial presumption of equal shares has been rebutted. *See, e.g.*, *Howard*, 427 P.3d at 1048–49. This presumption would apply to set ownership interests according to the parties' respective financial contributions to the property. *Id.* We decline Larsen's invitation to adopt a second presumption in addition to the first. Our holding today permits our trial courts

10

to consider the totality of the circumstances to determine whether the presumption of equal shares has been overcome by a preponderance of the evidence. A partition action is an action in equity. *Nordgaarden*, 2023 WL 2618459, at *7. Our trial courts are well-equipped to review the evidence and determine whether to apply the presumption of equal shares. A second presumption would only serve to invade the province of the district court and complicate the determination of the parties' respective ownership interests.

The district court in this case erred in conducting the second step of the partition inquiry because it did not consider any evidence beyond the language of the deed to determine whether Larsen had rebutted the presumption of equal shares. Given that the deed at issue was silent as to Larsen and Juker's respective ownership shares, the district court should have permitted Larsen to produce the extrinsic evidence he claimed would show that the parties did not intend to create equal ownership in the Rock Garden Property. For purposes of summary judgment, the district court needed to consider whether the evidence Larsen produced was admissible and created a genuine issue of material fact as to the parties' intent in creating equal ownership interests in the property. We now employ this standard in our de novo review of the district court's decision denying Larsen's motion for reconsideration.

3. <u>There is a genuine issue of material fact regarding the parties' respective ownership interests in the Rock Garden Property.</u>

Larsen argues that there is no genuine issue of material fact concerning the parties' respective ownership interests because the only admissible evidence in the record shows he made all the financial contributions. Larsen asserts that he contributed all the funds necessary for the improvements to the Rock Garden Property, including the down payment on the construction loan he and Juker jointly obtained and all loan payments to date. The Estate asserts that the parties' intent regarding the deed is a disputed fact. The Estate further argues there is a genuine dispute of material fact related to contributions for the improvements to the Rock Garden Property.

The district court concluded that there was a genuine dispute of material fact related to the parties' contributions toward the improvements to the Rock Garden Property but treated the dispute as one applicable to a contribution claim, rather than a determination of the parties' respective ownership interests. The district court therefore concluded that the amount of contribution to which Larsen was entitled would be resolved at a court trial. After that amount was determined, Larsen would be reimbursed from the proceeds of the sale of the Rock Garden Property.

11

A presumption of equal shares arises in this case because the quitclaim deed is silent as to Larsen's and Juker's respective ownership interests. However, Larsen has produced admissible evidence that raises a genuine issue of material fact regarding the parties' intent concerning their respective ownership interests in the Rock Garden Property. Larsen contends that there is no genuine issue of material fact as to his monetary contributions. As a result, he claims that he not only rebutted the presumption of equal shares, but that he also established the parties did not intend for Juker to have any interest in the property. He further contends that even if we do not agree with him on this point, at a minimum, his evidence established a genuine issue of material fact concerning the parties' intended ownership interests and therefore, the district court erred in granting summary judgment.

After considering all of the evidence presented below, we conclude that there is a genuine issue of material fact concerning the parties' respective ownership interests. Larsen's evidence of unequal monetary contributions was not the only evidence presented that bore on the parties' intended ownership interests. Larsen's own declaration states that "[i]n order to qualify for the necessary financing, [Juker] and I submitted a joint loan application to First Federal" for which he and Juker were later jointly approved. Larsen continues, "[a]round that time, [Juker] and I orally agreed that after the closing of the First Federal loan, [Juker] would sell the Wrangler Property, use the sale proceeds to pay down the First Federal loan, and move into the new home with me." Larsen then states that he agreed to finance the construction costs until the Wrangler Property was sold. While Larsen has produced evidence suggesting he contributed all sums for improving the Rock Garden Property, Larsen admits he was unable to procure financing for the improvements to the Rock Garden Property without Juker being a co-obligor on the construction loan. The lending bank required Larsen to sign a quitclaim deed, transferring an interest in the property to Juker in exchange for providing the construction loan.

This evidence indicates that Larsen intended to convey an interest in the Rock Garden Property to Juker because otherwise he could not have obtained the construction loan. In a similar vein, the fact that Juker agreed to be a co-obligor on the loan, combined with the parties' agreement that she would use the proceeds from the sale of the Wrangler Property to pay down the construction loan, suggests the parties' agreed that Juker would own an interest in the property. Aside from Larsen's monetary contributions, he presented no evidence to suggest that the parties intended anything other than to equally share in ownership of the property. When viewed together,

12

this evidence establishes a genuine issue of material fact precluding summary judgment on the question of the parties' respective ownership interests in the property. Therefore, we reverse the district court's grant of summary judgment to the Estate concerning the parties' respective ownership interests and remand for further proceedings consistent with this opinion.

Finally, we reject Larsen's assertion that he owns a 100% interest in the Rock Garden Property. Larsen voluntarily executed a quitclaim deed conveying an interest in the property to Juker. In exchange, she agreed to assume equal responsibility for the construction loan and the bank agreed to make the construction loan to them. The district court properly determined, based on the plain language of the deed, that Larsen conveyed *an interest* in the Rock Garden Property to Juker. We affirm the district court's determination that Juker has an interest in the property.

We remand so that the district court may determine the parties' respective ownership interests. After considering the totality of the evidence, the district court may reach the same conclusion it reached on summary judgment. But first, the district court must consider all admissible and relevant evidence bearing on the parties' intent, including evidence extrinsic to the deed. On remand, the district court will need to determine whether Larsen has rebutted the presumption of equal shares by a preponderance of the evidence adduced at trial.

4. <u>After ascertaining the parties' ownership interests, the district court must determine whether partition by sale is warranted.</u>

Larsen argues the district court erred by concluding partition by sale must occur as a matter of law. The Estate asserts that the district court properly concluded partition by sale must occur based on its position that the parties each owned an undivided, one-half interest in the Rock Garden Property. The district court concluded that partition by sale must occur because the property could not be divided equally without great prejudice to the parties.

The district court's error in granting summary judgment concerning the parties' respective ownership interests requires that we vacate the district court's order for a partition by sale. The parties' respective interest in the Rock Garden Property must be determined before the district court can determine whether the property should be partitioned in kind or by sale. As previously explained, Idaho's partition statutes give rise to a three-step inquiry. The determination of whether great prejudice would result from a partition in kind is made after the parties' respective interests in the property have been ascertained.

It is possible that the district court could determine that the parties intended Juker to receive something less than a 50% interest. Although the Rock Garden Property contains only one

residence, it also includes 5.05 acres of land. Depending on the parties' respective ownership interests and the value of the land, it may be possible to physically partition the property without great prejudice by giving one the house and the other part of the remaining land. It is also possible, again depending on the parties' respective ownership interests and the value of the land, that the property could be physically partitioned and any resulting inequality in value resolved through a compensatory adjustment between the parties. *See* I.C. § 6-541 ("[I]n all cases the court has power to make compensatory adjustment between the respective parties according to the ordinary principles of equity."). As a result, we vacate the district court's order for a partition by sale so that the district court may analyze whether great prejudice would result from a physical partition *after* it determines the parties' respective ownership interests.

For guidance on remand, we direct the parties and the district court to our recent decision holding that a trial court must consider the totality of the circumstances when considering whether great prejudice would result from a physical partition. *See Nordgaarden*, 2023 WL 2618459, at *4–7. On remand the district court should apply this standard to determine whether partition in kind would result in great prejudice to the parties.

## B. We do not award either party attorney fees on appeal.

Both parties request attorney fees pursuant to Idaho Appellate Rule 41 and Idaho Code section 6-545. By its plain language, section 6-545 only permits an award of attorney fees "expended . . . for the common benefit" of the parties to the partition action. I.C. § 6-545. Otherwise, when litigation arises between the parties, the court may require them to bear their own expenses of litigation. *Id.* Neither party to this appeal has expended attorney fees on appeal for "the common benefit." Instead, this appeal is wholly adversarial in nature and, as a result they each should bear their own fees.

## V.    CONCLUSION

We reverse the district court's grant of summary judgment in favor of the Estate because there is a genuine issue of material fact regarding the parties' respective ownership interests in the Rock Garden Property, which must be resolved before deciding whether partition by sale or in kind is the appropriate remedy. We remand for further proceedings consistent with this opinion. We decline to award either party attorney fees, but award Larsen his costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, Justices BRODY, STEGNER, and MOELLER, CONCUR.