# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38971

JACK L. GARRETT,

    Plaintiff-Counterdefendant-Appellant,

v.

THELMA V. GARRETT,

    Defendant-Counterclaimant-
    Respondent.

)
)
)
)
)
)
)
)
)
)
)

Boise, February 2013 Term

2013 Opinion No. 68

Filed: June 11, 2013

Stephen Kenyon, Clerk

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Gregory M. Culet, District Judge.

The judgment of the district court is affirmed.

Rainey Law Office, Boise, for appellant. Rebecca A. Rainey argued.

Troupis Law Office, Eagle, for respondent. Christ T. Troupis argued.

_____

HORTON, Justice.

This case arises from a dispute regarding the nature of real property (the Middleton property or the property) located in Middleton, Idaho. Alva Garrett originally owned an 80-acre parcel, but sold most of it to retire some of his debts. Alva was married to Thelma Garrett, but owned this property separately. In 1990, Alva executed a quitclaim deed (the 1990 deed) to the Middleton property from Alva Garrett to Alva Garrett and Thelma Garrett. In 2006, Alva executed another quitclaim deed (the 2006 deed) to the property from Alva Garrett to Jack Garrett, Alva's son. Alva gave the deed to Jack's brother, John, with instructions not to record it until Alva's death. Alva died in March 2008, and the deed was recorded. Jack filed suit against his step-mother, Thelma, to partition the property. After a bench trial, the court ruled that the 1990 deed transmuted the property from separate to community, invalidating the 2006 deed. It ruled in the alternative that Alva had no present intent to transfer title when he gave John the 2006 deed, making the delivery invalid. We affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Alva and Thelma Garrett lived on the Middleton property during their entire 32 years of marriage until Alva passed away in 2008. They were each married previously, and they each had children from those prior marriages. They also each brought separate real property to the marriage. When they were married, Alva initially owned three parcels of real property. Over time, he sold all of his property except for the Middleton property. In 1990, financial hardship forced him to sell off a significant portion of the Middleton property as well. He retained 26 acres of the property, which included the home where he and Thelma resided. Two months later, Alva executed a quitclaim deed that simply stated that the deed conveyed the property from Alva L. Garrett to Alva L. Garrett and Thelma V. Garrett. Alva prepared this deed himself, without consulting an attorney. The day after executing that quitclaim deed, Alva and Thelma granted a mortgage on the property for $20,000. They were both listed on the mortgage documents. Alva and Thelma paid off the mortgage jointly. They also paid the taxes on the property from their joint checking accounts.

In 1995, Alva and Thelma entered into a contract for wills that provided that the surviving spouse would take the entire estate. Upon the death of the survivor, the estate would be divided equally among the seven children of their combined family. The Middleton property was the only real property owned by their estates.

In February 2006, Alva executed a quitclaim deed purportedly conveying his interest in the Middleton property to his son, Jack Garrett. Thelma was unaware of this until after Alva's death. Alva gave the deed to John Garrett, Jack's brother, and instructed him not to record it until after Alva's death. John kept the deed and recorded it in March 2008, two days after Alva's death. After the preparation of the 2006 deed, the management of the Middleton property went on as before. Alva and Thelma continued to live in the home, and Jack continued to pay them rent for farming the property.

In August 2009, Jack filed suit to partition the property. Thelma argued that Alva had transmuted the property by executing the 1990 deed. Jack argued that the 1990 deed had created a tenancy in common and the 2006 deed had transferred Alva's one-half interest to Jack. Following a bench trial, the district court ruled that Alva had intended to transmute the property from separate to community when he deeded the property to himself and Thelma in 1990 and that because Thelma did not consent to the 2006 transfer, it was void. The district court found

that "[i]t is inescapable that one reason for Alva to transfer his remaining property to both Alva and Thelma was to effectuate obtaining another mortgage on the property." Thus, pursuant to this Court's decision in *Barrett v. Barrett*, 149 Idaho 21, 232 P.3d 799 (2010), the district court ruled that it was free to consider all evidence with regard to Alva's intent to transmute the property. However, no evidence was introduced regarding whether the bank required Alva to execute the 1990 deed in order to obtain the mortgage. The court also ruled in the alternative that the 2006 deed had not been validly delivered because Alva did not intend to divest himself of the property until after his death. Jack appeals arguing the 1990 deed created a tenancy in common and the 2006 deed was properly delivered.

## II. STANDARD OF REVIEW

The party asserting that property was transmuted must prove the intent to transmute by clear and convincing evidence. *Hoskinson v. Hoskinson*, 139 Idaho 448, 459, 80 P.3d 1049, 1060 (2003). Furthermore, overcoming a presumption of valid delivery of a deed also requires clear and convincing evidence. *Russ Ballard & Family Achievement Inst. v. Lava Hot Springs Resort, Inc.*, 97 Idaho 572, 579, 548 P.2d 72, 79 (1976). "[W]here the trial court has explicitly determined the case by application of the clear and convincing evidentiary standard, this Court must determine if the decision was supported by substantial and competent evidence." *In re Doe*, 146 Idaho 759, 761, 203 P.3d 689, 691 (2009). Thus, the trial court's finding will not be disturbed unless it is clearly erroneous. *Matter of Aragon*, 120 Idaho 606, 608, 818 P.2d 310, 312 (1991) (citing *In Interest of Bush*, 113 Idaho 873, 876, 749 P.2d 492, 495 (1988)).

## III. ANALYSIS

We affirm the district court's finding that there was no valid delivery of the 2006 deed. With no valid delivery, regardless of the nature of the property, title to the property remains with Thelma. Thus, it is unnecessary for the Court to rule on the transmutation issue.[1]

---

[1] Although unnecessary to the determination of this appeal, we feel it is important to reiterate the limited scope of our holding in *Barrett v. Barrett*, 149 Idaho 21, 232 P.3d 799 (2010). In that case we held that "the language of a deed executed in the course of refinancing does not conclusively determine the character of property for purposes of a divorce action." *Id.* at 24, 232 P.3d at 802. That is a narrow exception to the general requirement that deeds are to be interpreted by their plain language. This Court recognized that when a deed is executed at the behest of a bank during refinancing, it is not necessarily a completely accurate portrayal of the grantor's intent. *Barrett* should not be interpreted as allowing extrinsic evidence in other situations where the deed is unambiguous.

**A. The district court relied on substantial and competent evidence to find that the 2006 deed was not properly delivered.**

The district court found that executing the 2006 deed and giving it to John did not constitute a valid delivery. It held that an effective delivery had not taken place because, although he delivered a quitclaim deed to a third party, "Alva did not intend to divest himself of title to the Middleton Property until after his death." Jack argues that the district court abused its discretion by improperly shifting the burden of proof. He argues that as record title holder, he should have been the presumed owner and Thelma should have had the burden to prove that the delivery was invalid. Thelma argues that she produced sufficient evidence to allow the district court to find that a valid delivery of the deed never took place.

A deed is not effective until it is delivered "with intent that it shall operate." *Barmore v. Perrone*, 145 Idaho 340, 344-45, 179 P.3d 303, 307-08 (2008) (quoting *Bowers v. Cottrell,* 15 Idaho 221, 228, 96 P. 936, 938 (1908)). "The intent with which it is delivered is important. This restricts or enlarges the effect of the instrument." *Id*. When a grantee possesses a deed, he enjoys a presumption of valid delivery. *Hartley v. Stibor*, 96 Idaho 157, 160, 525 P.2d 352, 355 (1974). However, it may be shown by parol evidence that the delivery was invalid. *Barmore*, 145 Idaho at 344-45, 179 P.3d at 307-08. "[T]he real test of the delivery of a deed is this: Did the grantor by his acts or words, or both, intend to divest himself of title? If so, the deed is delivered." *Estate of Skvorak,* 140 Idaho 16, 21, 89 P.3d 856, 861 (2004) (internal quotation omitted). Thus, although a deed in the possession of a grantee is presumed to have been validly delivered, that presumption can be overcome by a showing that there was no intent to make a present transfer of title.

A deed does not need to be delivered directly to the grantee to be effective. A grantor can deliver the deed to a third party to hold in escrow until the grantor's death. *Cell v. Drake*, 61 Idaho 299, 303, 100 P.2d 949, 950 (1940) (citing *Showalter v. Spangle*, 160 P. 1042 (Wash. 1916)). However, that delivery is only valid when the grantor retains no dominion or control over the deed. *Id*. When that happens, an immediate estate vests in the grantee and the grantor retains a life estate. *Id*.

> A grantor legally may transfer a deed to a third person with instructions to deliver it to the grantee after the grantor's death. Under such circumstances the deed takes effect from the first delivery. On the other hand, the grantor must surrender dominion and control over the title, and, if a power to recall the deed is reserved by him or her, there is no effectual delivery and the deed cannot take effect, even

4

though it comes into the manual custody of the grantee and is recorded without authorization.

The intention of the grantor to part with the title, as evidenced by the circumstances surrounding the transaction, affords the true test. Such intention must be established as of the time of delivery to the depositary . . . .

26A C.J.S. Deeds § 89 (citations omitted). Thus, delivery to a third party may satisfy the requirements for a valid delivery, but the fundamental question remains as to the intent of the grantor upon delivery to the third party.

The intent to deliver is shown by "the circumstances surrounding the transaction." *Crenshaw v. Crenshaw*, 68 Idaho 470, 476, 199 P.2d 264, 267 (1948). "It is beyond controversy that the evidence of delivery must come from without the deed. In other words, a deed never shows upon its face nor by the terms thereof a delivery, and parol evidence thereof must necessarily be admitted when the question of delivery arises." *Barmore*, 145 Idaho at 345, 179 P.3d at 308 (quoting *Whitney v. Dewey*, 10 Idaho 633, 655, 80 P. 1117, 1121 (1905)). In addition, "[s]ince delivery of a deed is necessary for the deed's validity, any evidence is admissible if it indicates the absence of delivery. Therefore, the parol evidence rule does not bar admission of evidence used for the purpose of determining whether delivery of the relevant deed occurred." *Id*. By its very nature, evidence of delivery or lack thereof can only come by way of parol evidence.

In this case, Alva executed a quitclaim deed and gave it to Jack's brother, John, to record after Alva's death. However, the district court determined that no direct evidence had been introduced regarding Alva's dominion and control of the deed once he gave it to John. Thus, the district court reasoned that the circumstances surrounding the delivery of the deed provided the best evidence of Alva's intent. The court found that Alva did not possess the intent to effectuate a present transfer of title. As evidence of this lack of intent, the court cited the fact that Alva remained on the property, Jack was initially unaware of the execution of the deed, Jack continued to pay rent to Alva and Thelma even after the quitclaim deed was executed, and Alva exercised dominion and control over the property until his death. Furthermore, Jack seemed to recognize that the quitclaim deed was not intended to have any effect until after Alva's death. Jack was asked, "Would you agree with me that you felt that as long as Alva was living he was entitled to continue to treat the land as his own regardless of this deed being in existence?" To which Jack responded, "Yes, I guess." Jack argues that all of these facts are not necessarily

inconsistent with Alva divesting himself of the property while retaining a life estate. However, "[i]f the trial court based its findings on substantial evidence, even if the evidence is conflicting, this Court will not overturn those findings on appeal." *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009). Because the district court's finding that Alva lacked present intent to transfer title was supported by substantial and competent evidence, its decision was not clearly erroneous. Thus, we affirm the judgment based upon the district court's decision that there was no valid delivery of the quitclaim deed from Alva to Jack.

## IV. CONCLUSION

We affirm the judgment of the district court. Costs to Thelma.

Chief Justice BURDICK and Justices EISMANN and J. JONES **CONCUR**.

W. JONES, specially concurring:

Although I concur with the majority Opinion to the extent it holds there is no valid delivery of the deed in this case and therefore the title to the property at issue remains with Thelma, I write separately only to clarify that I disagree with footnote 1 in the majority Opinion regarding the majority Opinion in *Barrett v. Barrett*, 149 Idaho 21, 212 P.3d 799 (2010), holding that there is a narrow exception to the general requirement that deeds are to be interpreted by their plain language. In that case, this Court held that extrinsic evidence was admissible to prove the intent of the grantor, even though the language of the deed was clear and unambiguous. I dissented in that case on the grounds that there was no justification for an exception when the deed is, in fact, clear and unambiguous as to its effect. I continue to adhere to that position and therefore want to make it clear that by concurring in the majority Opinion, my concurrence does not include the content of the footnote that there is or should be a narrow exception to the rule that clear and unambiguous deeds should be interpreted by the language in the deed rather than by extrinsic evidence.

6