# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48512

| | |
|---|---|
| ELEANOR J. MARTIN, an individual; JOHN A. GARRETT, an individual, JACK L. GARRETT, an individual; and MARILYN G. ROSENBERGER, an individual, ) ) ) ) ) | Boise, December 2021 Term |
| Plaintiffs-Appellants, ) ) | Opinion filed: March 9, 2022 |
| v. ) ) | Melanie Gagnepain, Clerk |
| THE THELMA V. GARRETT LIVING TRUST, an Idaho Trust; CYNTHIA A. SWARTZ, an individual; and JAMES J. SWARTZ, an individual; and collectively husband and wife, and anyone else claiming an interest in the real property described as: ) ) ) ) ) ) ) | |
| The West 26 2/3 acres of land located in the Southwest quarter of the Southeast quarter (SW 1/4 of SE 1/4) Township 5 North, Range 2 West, Section 32, Boise Meridian, Canyon County, Idaho. ) ) ) ) ) ) | |
| Described more fully as follows: ) ) | |
| Commencing at the Southwest corner of Southeast quarter, Section 32, Township 5 North, Range 2 West, Canyon County, Idaho, 53 1/3 rods East, 80 rods North 53 1/3 rods West, 80 rods South, in the above described land, together with their appurtenances, ) ) ) ) ) ) ) | |
| Defendants-Respondents, ) ) | |
| and ) ) | |
| THE ESTATE OF THELMA V. GARRETT, ) ) | |
| Defendant. ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Andrea L. Courtney, District Judge.

1

The judgment of the district court is <u>affirmed</u>.

Murphy Law Office, PLLC, Meridian, for Appellants. Michaelina Murphy argued.

Sherer & Wynkoop, LLP, Meridian, for Respondents. Stephen Sherer argued.

---

MOELLER, Justice.

This appeal concerns a dispute among stepsiblings over the remnant of their parents' estates consisting of approximately 26 acres of real property in Canyon County. When Alva and Thelma Garrett married in 1976, they created a blended family consisting of Alva's four children and Thelma's three children. They later executed reciprocal wills which, upon the death of the first spouse, left all of their property to the survivor. They also signed a contract in which they agreed that upon the death of the surviving spouse, the survivor's remaining property would be divided among the seven children in equal shares. When Alva died, Thelma created a living trust and conveyed certain real property into the name of the trust. Upon Thelma's death, the real property in trust was distributed to Thelma's daughter, Cynthia Swartz, and her husband, James Swartz. Thelma's estate was never probated.

Several years later, Alva's Children sued the Swartzes, the trust, and "the Estate of Thelma V. Garrett", alleging that Thelma had breached the terms of the will contract. The district court granted summary judgment in favor of the Swartzes, holding that Thelma's conveyance of the real property to the trust did not breach the contract. The district court also awarded the Swartzes attorney fees. Alva's Children timely appealed. For the reasons set forth below, we affirm the district court's decision on alternate grounds.

## I.     FACTS AND BACKGROUND

Alva and Thelma Garrett married in 1976. At the time of the marriage, each had children from a previous marriage. Alva's four children are Eleanor J. Martin, Marilyn E. Clapp,[1] John A. Garrett, and Jack L. Garrett (collectively, "Alva's Children"). Thelma's three children are Garret J. Longstreet, Thomas K. Longstreet, and Cynthia A. Swartz. At the time of the marriage, Alva

---

[1] The Wills and the Will Contract refer to Marilyn E. Clapp as Alva's daughter; however, the Trust refers to a "Marilyn Rosenberger." Yet, in their brief, Respondents state "Plaintiff Marilyn Rosenberger is a daughter of Thelma Garrett." This appears to be an error on Respondents' part because if Marilyn Rosenberger is not Marilyn Clapp, she would have no interest in the Real Property inasmuch as Marilyn Clapp is listed in the Contract and Will.

owned real property (the "Real Property") in Canyon County, Idaho. Alva executed a quitclaim deed transferring one-half interest in the Real Property to Thelma on June 20, 1990.

On January 27, 1995, Alva and Thelma each executed a Last Will and Testament (referred to as "the Will" or "the Wills"). The Wills were reciprocal. That same day they also executed a Contract for Wills (the "Will Contract"). The Will Contract states, in relevant part:

> WHEREAS, The parties hereto are desirous that their property, real, personal and mixed shall, after their deaths, pass in the manner as hereinafter set forth. . . .
>
> 1. Each of the parties hereto have executed his or her Last Will and Testament, a copy of each is attached hereto, marked Exhibits "A" and "B" respectively, and by this reference made a part hereof.
>
> 2. The survivor agrees on his or her death to give, devise, and bequeath his or her property in accordance with the provisions of his or her Will attached hereto marked Exhibits "A" or "B". . . .
>
> 4. This agreement cannot be changed, modified or discharged orally in whole or in part but may be only changed, modified or discharged by written agreement between the parties.

Alva's and Thelma's Wills state that at the death of the first spouse, the deceased spouse's property will pass to the surviving spouse. Upon the surviving spouse's death, the property will pass equally to all seven of the children. Thelma's Will states:

> In the event my husband, Alva L. Garrett, shall have predeceased me . . . I hereby give, devise and bequeath all of the rest, residue and remainder of my property of every kind and nature, real, personal and mixed, wheresoever the same may be situated, owned by me at the time of my death, to my children by a former marriage, namely Garret J. Longstreet, Thomas K. Longstreet and Cynthia A. Swartz, and to the children of my husband by a former marriage, namely Eleanor J. Martin, John A. Garrett, Jack L. Garrett and Marilyn E. Clapp, share and share alike.

The terms of the Wills and the Will Contract were never modified or rescinded.

In early 2006, Alva attempted to convey the Real Property to his son Jack via a quitclaim deed. Alva gave the quitclaim deed transferring his interest in the Real Property to Jack to his other son John. However, the deed was not recorded until March of 2008, two days after Alva died, apparently at Alva's direction. On April 10, 2008, Thelma filed an application to probate Alva's will. On March 12, 2009, Thelma, as the personal representative of Alva's estate, executed a personal representative's deed conveying all interest in the Real Property to herself. On August 21, 2009, Alva's son Jack filed a lawsuit for partition of the Real Property. On May 19, 2011, the district court entered its Findings of Fact and Conclusions of Law. The district court determined that because Alva had executed a quitclaim deed in 1990 conveying the property to himself and

3

Thelma, Alva had transmuted the property from his separate property to community property giving Thelma a community property interest in the Real Property. The district court in *Garrett* then held:

> Because Alva Garrett's 2006 quitclaim deed transferring his interest in the [Real Property] to Jack Garrett did not include the written consent of his wife, Thelma Garrett, the transfer is void. Alternatively, because the delivery of the 2006 quitclaim deed from Alva Garrett to Jack Garrett was not completed before Alva Garrett's death, it was not a valid conveyance of Alva Garrett's interest in the [Real Property].

This Court affirmed the decision of the district court on the basis that the deed had not been delivered. *Garrett v. Garrett*, 154 Idaho 788, 792, 302 P.3d 1061, 1066 (2013). Thus, Thelma had ownership of all the Real Property immediately following Alva's death.

After the district court in *Garrett* rendered its decision, but prior to the Idaho Supreme Court's decision affirming the district court, Thelma created the Thelma V. Garrett Living Trust (the "Trust"). That same day, Thelma executed a warranty deed conveying all interest in the Real Property to the Trust. The original Trust agreement provided an equal distribution of the Trust estate to Garret, Thomas, Cynthia, and Marilyn. It excluded three of Alva's four children (Eleanor, Jack, and John), only distributing a share to Marilyn.[2] On September 17, 2014, Thelma executed the Fourth Amendment to the Trust, which revised the distributions to the beneficiaries, effectively excluding all of Alva's Children *and* Thelma's children from receiving a share of the Real Property, except for Cynthia. The fourth amendment stated, "To Cindy Swartz, all of that [Real Property] . . . The bequest of this [Real Property] is subject to the obligation to pay the cash distributions to Marilyn Rosenberger, the children of Tom Longstreet, and Garret Longstreet . . . ."

On November 27, 2016, Thelma died. On February 22, 2017, Cynthia, as successor trustee of the Trust, executed a quitclaim deed conveying all interest in the Real Property to Cynthia and her husband, James J. Swartz (collectively, the "Swartzes"). Thelma had assets, bank accounts and personal property which were not owned by the Trust but were apparently passed to individuals through other means. None of Alva's Children have received anything from the Trust.

On November 28, 2018, Alva's Children filed a complaint against (1) the Trust, (2) "the Estate of Thelma V. Garrett," and (3) the Swartzes, alleging breach of contract and seeking to quiet title to the Real Property. On December 31, 2018, the Trust, Cynthia, and James (collectively, the

---

[2] If Marilyn Clapp (Alva's Child) is not the same person as Marilyn Rosenberger, then the Trust excluded all four of Alva's Children.

"Respondents") answered the complaint. However, "the Estate of Thelma V. Garrett," which did not formally exist since a probate action had never been initiated and, consequently, no personal representative had been appointed, did not answer the complaint. A default was entered against "the Estate of Thelma V. Garrett".

Alva's Children then filed a motion for summary judgment. The Respondents filed a cross-motion for summary judgment on all claims in the complaint. While the cross motions for summary judgment motion were under advisement, Respondents filed a motion to dismiss, alleging for the first time that the district court had lost subject matter jurisdiction because no probate had been filed and the time for doing so had passed. Respondents argued that pursuant to Idaho Code section 15-3-104, a claim could not be enforced against Thelma's estate. The district court denied the motion in a bench ruling without specifically addressing the issue. The Respondents filed a motion for reconsideration, which the district court also denied.

On September 15, 2020, the district court issued a Memorandum Decision and Order on Cross-Motions for Summary Judgment. The district court granted summary judgment in favor of the Respondents, but on grounds unrelated to the probate issue. Respondents were awarded costs. Alva's Children appealed.

## II.     STANDARD OF REVIEW

"The standard of review on appeal from an order granting summary judgment is the same standard that is used by the district court in ruling on the summary judgment motion." *Hoke v. Neyada, Inc.*, 161 Idaho 450, 453, 387 P.3d 118, 121 (2016). Under Idaho Rule of Civil Procedure 56(a), a court "must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he burden of proving the absence of material facts is upon the moving party." *Partout v. Harper*, 145 Idaho 683, 688, 183 P.3d 771, 776 (2008). The court "must liberally construe facts in the existing record in favor of the nonmoving party, and draw all reasonable inferences from the record in favor of the nonmoving party." *State v. Rubbermaid, Inc.*, 129 Idaho 353, 355, 924 P.2d 615, 617 (1996). "If there are conflicting inferences contained in the record or if reasonable minds might reach different conclusions, summary judgment must be denied." *Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 264, 483 P.3d 313, 321 (2021). "However, summary judgment is appropriate where the nonmoving party fails to show evidence sufficient to establish an essential element of a claim on which they will bear the burden of proof at trial." *Id.* (citing *Partout*, 145 Idaho at 688–89, 183

5

P.3d at 776–77). The nonmoving party cannot rely on mere allegations or denials, but "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Partout*, 145 Idaho at 688, 183 P.3d at 776 (quoting I.R.C.P. 56(e)). "This Court reviews questions of law de novo." *State, Dept. of Health and Welfare v. Housel*, 140 Idaho 96, 101, 90 P.3d 321, 326 (2004).

"When a judgment on appeal reaches the correct conclusion, but employs reasoning contrary to that of this Court, we may affirm the judgment on alternate grounds." *Martel v. Bulotti*, 138 Idaho 451, 454–55, 65 P.3d 192, 195–96 (2003).

## III.   ANALYSIS

On appeal, Alva's Children argue that the district court erred when it held that Thelma did not breach the Will Contract by transferring the Real Property to her Trust following Alva's death. They argue that they were each entitled to a one-seventh interest in the Real Property. Respondents contend Thelma did not breach the Will Contract. Additionally, they argue that as a result of the failure to initiate a probate action:  (1) Alva's Children lacked standing; (2) Alva's Children failed to state a claim upon which relief could be granted; (3) there is no privity of contract between the Swartzes or Trust and Alva's Children or "the Estate of Thelma V. Garrett"; and (4) this claim was brought outside the statute of limitations. Alva's Children did not directly rebut these claims in their reply brief. Instead, they merely asserted that they were improperly raised on appeal because none of these issues were raised below.

Shortly, before oral argument, Respondents moved to augment the appellate record. This Court granted that motion. The augmented record contains the Respondents' Memorandum in Support of Motion to Dismiss with Prejudice and Memorandum in Support of Defendants' Motion for Reconsideration. The augmented record shows that three of these arguments were raised in connection with Respondents' motion to dismiss and motion for reconsideration. Only the standing issue was not raised below; however, standing may be raised for the first time on appeal. *Koch v. Canyon County*, 145 Idaho 158, 162, 177 P.3d 372, 376 (2008).

Although the merits of this case center on whether Thelma breached the Will Contract, we do not reach the merits of the breach of contract claim on appeal because we conclude that this case was brought in violation of Idaho Code section 15-3-104. Thus, we can affirm the district court's decision on alternate grounds.

**A. Alva's Children's claim is precluded by Idaho Code section 15-3-104.**

On appeal, Respondents argue that Alva's Children failed to comply with Idaho law by filing a suit against Thelma's estate without commencing a probate action within three years in which they ask the court to appoint a personal representative. Respondents are correct.

It is well established that claims against a deceased person must be brought against the personal representative of their estate. Idaho Code section 15-3-104 provides:

> No proceeding to enforce a claim against the estate of a decedent of his successors may be revived or commenced before the appointment of a personal representative. After the appointment and until distribution, all proceedings and actions to enforce a claim against the estate are governed by the procedure prescribed by this chapter.

An estate can only be administered after a personal representative is appointed by the court. I.C. § 15-3-103. Under Idaho Code section 15-3-108, a probate must be initiated within three years of the decedent's death.

The fact that Alva's Children prematurely attempted to sue Thelma's estate—without first initiating a probate and seeking the appointment of a personal representative for the estate—and then somehow obtained a default against the estate from the district court is of no legal effect. Thelma died on November 27, 2016; therefore, the time to commence the probate of her estate expired three years later. Although Alva's Children's complaint was filed November 28, 2018, one year before the time for probate had expired, at no point did they attempt to initiate probate and have a personal representative appointed. Respondents first raised this issue on December 2, 2019, a few days after the time for initiating a probate action expired, by filing a motion to dismiss on the basis that the claim was improper under section 15-3-104 because a probate had not been initiated and there was no personal representative to sue.

Alva's Children assert that although a probate was not initiated and a personal representative was never appointed for Thelma's estate, they may still recover the Real Property through an action for quiet title against the Trust and the Swartzes. When Thelma died, Cynthia, as trustee, transferred the Real Property to herself and her husband. Although Alva's Children brought suit against the Trust, their claim did not allege a breach of duty by Cynthia as trustee. Rather, this suit was pursued as a breach of contract claim against a deceased individual, Thelma. Neither the Trust nor the Swartzes were parties to the contract. The Swartzes received the property through the Trust. However, the quiet title action against the Swartzes by Alva's Children is predicated on an alleged breach of the Will Contract—not the Trust. The Swartzes were not parties to the Will Contract and, therefore, could not breach it. Thus, Alva's Children could only bring a

7

quiet title action against the Swartzes after first establishing that Thelma had breached the Will Contract. Any action seeking to recover property from the Swartzes based on Thelma's breach of the Will Contract should have first been initiated against her estate. If a breach of the Will Contract were established, then the personal representative could pursue an action against the Swartzes to "claw back" the real property and have it restored to the estate so that it could be properly distributed to the heirs. I.C. §§ 15-3-709, 15-3-908. However, inasmuch as Thelma's estate was never probated, nor a personal representative appointed within three years of her death, such an action against the estate is no longer timely. I.C. § 15-3-108.

This is the course prescribed under the Uniform Probate Code. "[T]he duty to settle and distribute the estate of the decedent" is vested in the personal representative. I.C. § 15-3-703. The method for addressing grievances, like those of Alva's Children, is set forth in Idaho Code section 15-3-709, which provides that the personal representative of an estate "may maintain an action to recover possession of property or to determine the title thereto." *See Elsaesser v. Gibson*, 168 Idaho 585, 593, 484 P.3d 866, 874 (2021) ("[S]ection 15-3-709 expressly provides that, 'every personal representative has a right to, and shall take possession or control of, the decedent's property' if in his personal judgment, possession by him is necessary for the purposes of estate administration."). Additionally, "the personal representative may recover the assets or their value if the distribution was improper." I.C. § 15-3-908. The comments to the Uniform Probate Code make it clear that "[t]he purpose of this section is to channel controversies which may arise among successors of a decedent because of improper distributions through the personal representative who made the distribution, or a successor personal representative." *Id*. cmt. Thus, the legislature has mandated that the ability to claw back property that was improperly removed from the estate is vested in the personal representative.

Alva's Children, by failing to timely initiate a probate proceeding and have a personal representative appointed, cannot now sidestep the probate code by bringing a breach of contract and quiet title action directly against the Trust and the Swartzes. Accordingly, Alva's Children's claims should have been dismissed on that basis. Therefore, we affirm the district court decision granting summary judgment to the Swartzes, but on the alternate grounds expressed here. *Martel*, 138 Idaho at 454–55, 65 P.3d at 195–96. In light of this ruling, it is unnecessary to address the remaining assertions by Alva's Children of error on appeal.

**B. The district court did not err when it declined to award attorney fees to Respondents.**

Respondents appeal the district court's denial of attorney fees. However, it is unclear upon what grounds the Respondents sought attorney fees below and the reasons why the district court did not grant them. No part of the appellate record shows the grounds upon which Respondents sought fees. The Motion for Costs and Attorney Fees, a Memorandum of Costs & Attorney Fees, Objection to Defendants' Motion for Costs and Attorney Fees, Motion Denied in part (in regard to fees), and the Order on Attorney Fees and Costs are not included in the original appellate record, nor were they included in the augmented record.

It was Respondents' duty to provide a record by which we could identify error. "Error will not be presumed on appeal, but must be affirmatively shown in the record. The appellant has the burden of providing an adequate record on appeal from which the Court can conduct an intelligent review of a trial court's decision." *State v. Mowrey*, 128 Idaho 804, 805, 919 P.2d 333, 334 (1996). Although Respondents are not the "appellants" in this case, they are cross-appealing the district court's decision to deny them attorney fees. They have not augmented the record to include the documents that may demonstrate an abuse of discretion. Under such circumstances, this Court refuses "to speculate as to the reasons for the district court's decision," let alone find reversible error. *Id.* Therefore, we will not disturb the decision of the district court to deny attorney fees.

**C. Respondents are not entitled to attorney fees on appeal.**

Respondents argue that they should be awarded attorney fees on appeal under Idaho Code section 12-121. We note that Respondents prevailed on appeal, but not on their cross-appeal for attorney fees below. Under Idaho Code section 12-121, this Court "may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." Respondents contend this case was pursued frivolously and without foundation because Alva's Children failed to comply with Idaho Code section 15-3-104.

While the requirements of Idaho Code section 15-3-104 are clear, and Alva's Children failed to comply, Alva's Children only proceeded with this case *after* the district court ruled that the failure to initiate probate proceedings was not an issue. The district court denied Respondents' motion to dismiss and later "declined to address via [the] motion for reconsideration the Defendant's new alternative arguments," including whether Idaho Code section 15-3-104 was applicable. In so doing, the district court essentially directed the parties to proceed. Thus, we

9

cannot say this case was pursued frivolously by Alva's children when it relied on the district court's ruling. Therefore, we decline to award Respondents attorney fees on appeal.

## IV. CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court regarding the Real Property on alternate grounds and affirm its decision to not award Respondents' attorney fees. Neither party is awarded attorney fees on appeal. However, as the overall prevailing party on appeal, Respondents are entitled to an award of costs pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, Justices BRODY, STEGNER and ZAHN **CONCUR.**