**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 48790**

| | | |
|---|---|---|
| BRAD H. HALL and ANDREA P. HALL, Husband and Wife, | ) ) ) | |
| Plaintiffs-Respondents, | ) ) | |
| v. | ) ) | |
| TRAVIS EXLER, in his individual capacity, and/or as the sole heir of the Estate of FRANK EXLER and LINDA EXLER, who may claim an interest in the real property more particularly described as: | ) ) ) ) ) ) | Boise, April 2022 Term<br><br>Opinion filed: September 9, 2022 |
| Lots 4 through 9 inclusive, Block 7, Roberts, Jefferson County, Idaho, | ) ) ) | Melanie Gagnepain, Clerk |
| and | ) ) | |
| Lots 10, 11, and 12 of Block 7, Roberts, Jefferson County, Idaho. | ) ) ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Jefferson County. Stevan H. Thompson, District Judge.

The judgment of the district court is affirmed.

David A. Johnson, P.A., for Appellant. David A. Johnson argued.

Hall Angell & Associates, LLP, for Respondents. Sam L. Angell argued.

_____

ZAHN, Justice.

This case concerns whether a district court erred in quieting title to real property based on either the lost deed doctrine or judicial estoppel. For the reasons set forth below, we affirm.

1

# I.  FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

In October 1998, Andrea and Brad Hall, together with Linda and Frank Exler, purchased real property in Roberts, Idaho. The Halls owned a two-thirds interest in the property and the Exlers owned one-third. In September 2005, Linda deeded all of her interest in the property to Frank. Frank died intestate in March 2006. Travis Exler, Frank's son and sole heir, was appointed as the personal representative of Frank's estate ("the Estate").

The parties' narratives regarding the years between Frank's death and the commencement of this action vary in several material respects. Brad testified that he received notice from Jefferson County in 2009 regarding unpaid taxes on the property. Brad then called Travis to discuss the notice. Brad testified that Travis said he was unable to pay the Estate's portion of the overdue taxes. Further, Brad testified the parties reached an agreement by which Travis would deed the property to the Halls if they paid the outstanding tax balance. Within weeks of their conversation, Brad contacted a law firm to prepare a quitclaim deed. He could not recall the attorney who prepared the quitclaim deed or the precise wording of the deed.

After receiving the quitclaim deed, Brad asked his employee, Barry Burke, to deliver the deed to Travis for his signature. Burke testified he dropped off the quitclaim deed with Travis's wife. A few days later, Burke stated that he picked up the deed and verified it was signed by Travis. Burke returned the deed to Brad. Brad testified that the deed was signed by Travis as the personal representative of the Estate. Brad believed he returned the deed to the law firm to have it recorded. Almost ten years later, in 2019, the Halls discovered that the deed had not been recorded. Further, neither Brad nor the law firm that prepared the deed could find the deed. In addition, Brad testified he did not have any documents related to the deed. Thus, Brad requested Travis to re-open probate of the Estate so that a new deed could be executed and recorded. Brad testified he personally delivered the "new" deed to Travis's wife. Travis refused this request and sent Brad a demand letter, claiming the Halls owed him $4,980 as reimbursement for cleanup work he had performed on the property.

In contrast, Travis testified that the parties had two conversations about the property, one in 2007 and another in 2009. Travis testified that in 2007 Travis stated he would transfer the Estate's interest in the property if the Halls reimbursed his costs associated with cleaning up the property. Travis testified that in 2009 the parties also agreed the Halls would take care of cleanup

2

costs and taxes. In any event, Travis stated that he did not transfer ownership of the property to the Halls and was never presented with a quitclaim or personal representative's deed. Further, Travis's wife testified that no one presented her with a deed or any documents in 2009.

Similarly, both Travis and his wife testified they had not been given a quitclaim deed to sign in 2019. Travis's wife testified Brad stopped by their house but did not present her with any documents. She claimed Brad only requested Travis to call him. Additionally, Travis testified he never received a deed from Brad. Travis did not call Brad, but instead sent a letter to the Halls requesting reimbursement of $4,980. Travis testified he has not received reimbursement from the Halls for the cleanup work he performed on the property.

It is undisputed that the Halls have been in sole control, use, and operation of the disputed property since 2009. The Halls have overseen the administration of the lease and maintenance of the property. Travis did not list any profit or loss from the property on his personal taxes. In addition, the Halls paid the overdue taxes on the property, and have made all tax payments on the property since 2009. The Halls and Travis did not communicate between 2009 and 2019.

In June 2010, Travis voluntarily filed for Chapter 13 bankruptcy. Travis did not list the property on his bankruptcy petition. The court trial was the first time the Halls learned this information. Travis testified his attorney at the time told him to not list properties in the Estate's name. However, Travis listed other properties that he inherited from Frank. Travis voluntarily requested that the bankruptcy court dismiss his petition. Further, the Chapter 13 Bankruptcy Trustee moved to dismiss based on Travis's failure to list an interest in the property, rental income, and the transfer of an apartment building and 150 cattle. The bankruptcy court dismissed Travis's petition.

## B. Procedural history

After Travis refused the Halls' request to reopen probate of the Estate, the Halls filed a complaint to quiet title to the property. On October 1, 2020, the district court held a bench trial on the Halls' quiet title claim. The Halls asserted ownership of the property on the basis of the lost deed, arguing that Travis deeded the property to them in 2009. After the bench trial, the district court issued a memorandum decision and order, quieting title to the disputed property in the Halls based on the lost deed doctrine.

On December 29, 2020, the district court entered a judgment quieting title in the Halls. Travis subsequently filed a notice of appeal on January 8, 2021. In response, the Halls filed a

motion for relief from judgment under Idaho Rule of Civil Procedure ("I.R.C.P.") 60 on January 21, 2021, seeking to have the district court consider a new claim of judicial estoppel based on Travis's failure to list the property in his bankruptcy petition. This motion is not included in the record. Before the district court heard argument on the Halls' I.R.C.P. 60 motion, this Court conditionally dismissed Travis's appeal and vacated the district court's judgment for failing to comply with I.R.C.P. 54(a)(1). Almost a week later, the district court held a hearing on the Halls' I.R.C.P. 60 motion. At the hearing, the Halls acknowledged that the judgment they sought relief from had been vacated and requested the district court to reopen the matter under I.R.C.P. 59(a)(3). The Halls requested the court "to issue a new order citing judicial estoppel as additional alternative grounds for quieting title." The district court granted the Halls' motion to reopen the case to consider their judicial estoppel claim and stated that its decision regarding the lost deed remained unaffected.

On March 29, 2021, the district court held a bench trial regarding the Halls' judicial estoppel claim. The Halls presented evidence that Travis had not listed the property in his bankruptcy petition. Travis, in turn, presented evidence that he had voluntarily dismissed his bankruptcy petition. The district court found that Travis tried to gain an advantage in the proceedings by taking a different position before the bankruptcy court than he did during the quiet title proceedings. The district court explained that if Travis's testimony at the court trial on the lost deed was true, he "should have clearly listed the property on his 2010 bankruptcy petitions." Since he failed to do so, the district court held that Travis was judicially estopped from claiming an interest in the property. The district court directed Travis to properly execute a quitclaim deed in favor of the Halls within 14 days of the decision. If Travis failed to execute a deed, the district court directed that a clerk's deed be issued as provided by law. A final corrected judgment was entered on April 18, 2021. Travis timely appealed.

## II.     ISSUES ON APPEAL

1. Whether the district court erred in quieting title to the property based on the lost deed doctrine?
2. Whether the district court erred in reopening the case to consider a judicial estoppel claim?
3. Whether the Halls are entitled to an award of costs and attorney fees on appeal?

## III.     STANDARD OF REVIEW

"Following a bench trial, this Court's review is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law."

4

*Wilson v. Mocabee*, 167 Idaho 59, 64, 467 P.3d 423, 428 (2020) (quoting *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017)). This Court exercises free review over a trial court's conclusions of law. *Latvala v. Green Enterprises, Inc.*, 168 Idaho 686, 695, 485 P.3d 1129, 1138 (2021). "This Court will not set aside a trial court's findings of fact unless the findings are clearly erroneous." *Wilson*, 167 Idaho at 64, 467 P.3d at 428. Factual findings are not clearly erroneous if they are supported by substantial and competent, although conflicting, evidence. *Id.* Substantial and competent evidence is evidence "that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal." *McCarthy Corp. v. Stark Inv. Grp., LLC*, 168 Idaho 893, 902, 489 P.3d 804, 813 (2021) (citing *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 795, 452 P.3d 809, 817 (2019)). "Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of witnesses, this Court will liberally construe the trial court's findings of fact in favor of the judgment entered." *Big Wood Ranch, LLC v. Water Users' Ass'n of Broadford Slough & Rockwell Bypass Lateral Ditches, Inc.*, 158 Idaho 225, 230, 345 P.3d 1015, 1020 (2015) (citing *Rowley v. Fuhrman,* 133 Idaho 105, 107, 982 P.2d 940, 942 (1999)).

A district court's decision to reopen a case prior to entry of judgment is reviewed under an abuse of discretion standard. *Printcraft Press, Inc. v. Sunnyside Park Utils., Inc.*, 153 Idaho 440, 457–58, 283 P.3d 757, 774–75 (2012); *see also* I.R.C.P. 59(a)(3). Pursuant to that standard, we ask whether the district court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted).

## IV. ANALYSIS

### A. The district court did not err in concluding that the Halls had presented clear and convincing evidence establishing the lost deed to the property.

Travis contends that the district court erred in quieting title to the property in the Halls based on the lost deed doctrine. He raises three arguments: (1) the statute of frauds requires a writing for the transfer of real property, (2) the district court's factual findings are not supported by substantial and competent evidence, and (3) the facts found do not amount to clear and convincing evidence on each element required to succeed on a lost deed theory. The Halls argue that the statute of frauds does not preclude quieting title based on a lost deed. Further, they contend

5

that the district court correctly determined that they had established the elements of the lost deed doctrine by clear and convincing evidence.

1. <u>The statute of frauds does not prohibit proving title to real property under the lost deed doctrine.</u>

This Court has not had an occasion to address the lost deed doctrine. The term "lost deed" has only been mentioned once in Idaho caselaw, by the Court of Appeals in *Krebs v. Krebs*, 114 Idaho 571, 759 P.2d 77 (Ct. App. 1988). In *Krebs*, the Court of Appeals considered whether a tract of real property was properly characterized as community property in a divorce proceeding. *Id.* at 573, 759 P.2d at 79. The husband contended that the real property was his separate property because his father conveyed it to him by quitclaim deed prior to the marriage. *Id.* The deed was never recorded, and the husband testified it had been lost prior to trial. *Id.* at 574, 759 P2d at 80. The magistrate court did not find the husband's, or his father's, testimony credible, and found that the real property was community property. *Id.* The Court of Appeals affirmed, stating that "[t]he existence of a lost deed is a question of fact provable by extrinsic evidence . . . [and] [t]he proponent of such a deed . . . must present clear and convincing evidence of its execution, delivery and contents." *Id.* Although *Krebs* articulated the elements required to establish a lost deed, and the burden of proof required of the proponent, it did not discuss how the lost deed doctrine related to the statute of frauds.

Delivery of a deed transfers title from the grantor to the grantee. *Garrett v. Garrett*, 154 Idaho 788, 791–92, 302 P.3d 1061, 1064–65 (2013). "When a deed has once been delivered, its subsequent loss will not divest the title of the grantee." 26A C.J.S. *Deeds* § 456 (2022). While the deed itself serves as primary evidence that title has vested in the grantee, subsequent loss of the deed does not foreclose the possibility that a grantee may prove the existence of a deed—and with it, title to the property—through secondary evidence. 54 C.J.S. *Lost Instruments* § 8 (2022); *see also* 23 AM. JUR. 2D *Deeds* § 292 (2022) ("Delivery of a complete deed . . . invests the grantee with title, and thereafter, the deed is important solely as evidence that the grantee was thereby invested with title.").

The statute of frauds "prevent[s] false or fraudulent contract claims by forbidding disputed assertions of certain types of contracts without any written memorandum of the agreement." *Tricore Invs., LLC v. Estate of Warren ex rel. Warren*, 168 Idaho 596, 612, 485 P.3d 92, 108 (2021) (citing *McKoon v. Hathaway*, 146 Idaho 106, 111, 190 P.3d 925, 930 (Ct. App. 2008)). As relevant here, Idaho Code section 9-505, this state's codification of the statute of frauds, requires

6

agreements for the sale of real property to be memorialized in writing to be valid and enforceable. I.C. § 9-505(4). Section 9-505 provides that evidence of an agreement required to be in writing cannot be received "without the writing *or secondary evidence of its contents*." I.C. § 9-505 (emphasis added). Secondary evidence is "[e]vidence that is inferior to the primary or best evidence and that becomes admissible when the primary or best evidence is lost or inaccessible." *Secondary Evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019). Examples of secondary evidence "include a copy of a lost instrument or testimony regarding a lost instrument's contents." *Id.* Thus, the plain language of section 9-505 contemplates that when a required writing is lost, its existence and contents may be proved by other means.

That said, although section 9-505 serves an evidentiary purpose, it is not a rule of evidence. *See* RESTATEMENT (SECOND) OF CONTRACTS § 137 cmt. a (1987). Section 9-505 is silent about how a litigant may prove the existence of a satisfactory writing with secondary evidence and what quantum of proof they need to offer. Answering those questions requires applying the Idaho Rules of Evidence and well-established jurisprudence regarding the proof of lost deeds.

The threshold issue in any lost deed case is the best evidence rule. Idaho Rule of Evidence ("I.R.E.") 1002 requires the submission of an original writing to prove its contents. I.R.E. 1002. Yet, I.R.E. 1004 provides four exceptions to this requirement, two of which are material in the lost deed context. First, secondary evidence of the contents of a writing may be presented where "all the originals are lost or destroyed, and not by the proponent acting in bad faith." I.R.E. 1004(a). Further, secondary evidence may be presented to prove the contents of a writing where "an original cannot be obtained by any reasonably practicable, available judicial process." I.R.E. 1004(b).

Assuming that a party satisfactorily demonstrates an exception to the best evidence rule, the most common iteration of the lost deed doctrine requires them to prove, by clear and convincing evidence, the deed's execution, delivery, and contents. *See Krebs*, 114 Idaho at 574, 759 P.2d at 80; *see also Hardine v. Pioneer Nat'l Title Co.*, 699 P.2d 1314, 1316 (Ariz. Ct. App. 1985); *Gooch v. Rodewald*, 432 P.2d 755, 756 (Colo. 1967); *Deglow v. Smith*, 459 P.2d 786, 786 (Wash. 1969). This standard safeguards the purposes of the statute of frauds, and we hold that it is the appropriate standard to use in proving lost deed claims in Idaho.

For the foregoing reasons, we conclude that the lost deed doctrine does not supplant the statute of frauds. A party seeking to establish the sale of real party must still establish that the agreement to sell the property was in writing. The lost deed doctrine simply effectuates what

7

Idaho's Statue of Frauds expressly allows – to establish the existence of that writing through secondary means when the writing itself cannot be found.

   2.   The district court's findings of fact and conclusions of law are properly supported.

Travis also contends the district court erred when it concluded the Halls had established the elements of the lost deed doctrine by clear and convincing evidence. Travis further argues that the district court's remaining findings of fact were not supported by substantial and competent evidence. The district court generally found Travis's testimony to be less credible than the Halls. Travis argues that the Halls did not carry their burden because "no evidence was presented showing who the grantor was including whether it was Exler individually or as personal representative, the legal description, and whether or not it was notarized." In addition, Travis contends that the evidence is insufficient to prove a lost deed claim because there was no testimony from the deed's drafter and the drafter is unknown. In response, the Halls argue that the district court's decision was supported by substantial and competent evidence.

The district court concluded that the Halls had presented clear and convincing evidence of the three elements of a lost deed claim. The district court found the specific chain of events provided by the Halls to be "more compelling than the general denial testimony presented by [Travis]." The district court found that (1) Travis signed a quitclaim deed in exchange for the Halls paying overdue and future tax obligations for the property; (2) the deed was then delivered to the Halls; and (3) the contents of the deed "consisted of Travis deeding the Estate's interest in the . . . property to the Halls."

The district court relied on the following evidence to support its findings: (1) Burke's testimony that he saw Travis's signature on the quitclaim deed; (2) Burke's testimony that he gave the signed deed to the Halls; (3) Brad's testimony that he saw Travis's signature on the deed; (4) the Halls' payment of the overdue taxes on the property; (5) the Halls' tax records showing that they have paid all the property taxes on the property since 2009; (6) the Halls' exercise of exclusive control over the property since 2009; and (7) that Travis had not objected to the Halls' exercise of exclusive control. Further, after reopening the matter, the district court found that Travis's failure to list the property on his bankruptcy petition supported the Halls' lost deed claim.

Travis presented conflicting evidence that he never signed a quitclaim deed to the property. He and his wife testified at trial that they never received a deed nor signed documents related to the property. Further, Travis stated that the agreement to convey the property required the Halls to

8

both pay taxes on the property and reimburse him for clean-up work performed on the property. Since the Halls never paid him for the clean-up work, he maintained that no quitclaim deed would have been executed.

Despite the presence of conflicting testimony from Travis, we conclude that the district court's factual findings are supported by substantial and competent evidence. A reasonable finder of fact considering Burke's testimony, the Halls' payment of taxes, and the course of conduct between the parties from 2009 until this action was filed could make the same factual findings as the district court. As such, we will not disrupt those findings on appeal.

Next, we turn to whether the district court's factual findings constituted clear and convincing evidence establishing all three elements of the lost deed doctrine.

### a. *Execution*

Execution is the "[v]alidation of a written instrument . . . by fulfilling the necessary legal requirements." *Execution*, BLACK'S LAW DICTIONARY (11th ed. 2019). Idaho Code section 55-601 provides that "a conveyance of an estate in real property may be made by an instrument in writing, subscribed by the party disposing of the same[.]" Both Burke and Brad testified to seeing Travis's signature on the deed. The Halls thereafter paid the property taxes on the property and Travis did not assert any ownership over the property. Further, Travis did not list the property on his bankruptcy petition. The district court's conclusion that Travis executed the quitclaim deed in exchange for the Halls' payment of property taxes is supported by clear and convincing evidence.

Although Travis takes issue with the deed not being notarized, there is no such requirement under Idaho Code section 55-601 except for the purpose of recording. *Adams v. Anderson*, 142 Idaho 208, 211, 127 P.3d 111, 114 (2005). In a similar vein, Travis provides no support for his assertion that the Halls were required to introduce evidence Travis signed the deed in his representative capacity. Neither argument is sufficient to undermine the district court's conclusion that Travis executed the quitclaim deed.

### b. *Delivery*

A deed takes effect after delivery with an intent that the deed shall be operative. *Barmore v. Perrone*, 145 Idaho 340, 344, 179 P.3d 303, 307 (2008). "The real test of the delivery of a deed is this: Did the grantor by his act or words, or both, intend to divest himself of title? If so, the deed is delivered." *Id.* (quoting *Estate of Skvorak*, 140 Idaho 16, 21, 89 P.3d 856, 861 (2004)). Evidence of delivery is necessarily proved by parol evidence. *Id.*

9

Here, the district court's findings satisfy the delivery element. Travis signed the quitclaim deed and Burke returned the signed deed to Brad. For the next decade Travis did nothing to indicate he believed he had a continuing ownership interest in the property. Taken together, these findings constitute clear and convincing evidence supporting the district court's conclusion that the deed was delivered to the Halls.

### c. Contents

A conveyance of real property must contain words of grant and a description of the property. *See City of Kellogg v. Mission Mountain Interests Ltd., Co.*, 135 Idaho 239, 243–44, 16 P.3d 915, 919–20 (2000). The contents of a lost deed do not need to be proved verbatim, it is sufficient that a witness (or witnesses) testify as to the substance of the deed. *Estate of Bossio v. Bossio*, 785 S.E.2d 836, 841–42 (W. Va. 2016) (citing *Dart. Indus., Inc. v. Commercial Union Ins. Co.*, 124 Cal. Rptr. 2d 142, 150–51 (Cal. 2002)).

Here, the district court's findings satisfy the requirement that the contents of the deed be proven by clear and convincing evidence. The Halls testified that Travis agreed to convey the Market Lake property to them in exchange for their payment of property taxes. The district court found that Travis signed the deed and Burke returned it to the Halls. Travis did not pay taxes on the property, communicate with the Halls about the property, and did not list the property on his bankruptcy petition. In short, Travis's actions suggest he had willingly divested himself of all title to the property. These facts constitute clear and convincing evidence supporting the district court's conclusion that the contents of the deed conveyed the property to the Halls.

In sum, we hold that the district court's factual findings were supported by substantial and competent evidence. Those factual findings, in turn, constitute clear and convincing evidence supporting the district court's conclusion that Travis conveyed the property to the Halls through a deed that has since been lost. As such, we affirm the district court's decision and judgment quieting title in the property to the Halls.

### B. The district court did not abuse its discretion in reopening the case.

Travis contends that the district court abused its discretion in two ways. First, he argues that the district court abused its discretion in reopening the matter because information from his bankruptcy filings was not new evidence. Second, he contends the district court abused its discretion in concluding that he was judicially estopped from asserting an interest in the property. The Halls only respond to the second issue, and do not address whether the district court abused

its discretion in reopening the matter. Because our decision today relies in part on factual findings made following the district court's decision to reopen the case, we will address Travis's first contention that the district court erred when it reopened the case. However, given our decision affirming the district court's decision and judgment based on its application of the lost deed doctrine, we do not address Travis's second argument that the district court erred in applying judicial estoppel against him.

Travis argues the district court abused its discretion in reopening the case because he testified to the contents of his bankruptcy petition at the October 1, 2020, bench trial, and because the claim was easily discoverable prior to that trial as a matter of public record. Travis claims the second, subsequent trial was done because of the "questionable determination in the first decision." The Halls do not address these arguments in their brief.

The district court addressed both I.R.C.P. 60 and I.R.C.P. 59 in its memorandum decision concerning the Halls' motion for relief. The district court granted Halls' I.R.C.P. 59 motion to reopen the case, reasoning that Travis's bankruptcy filings were newly discovered evidence that the Halls did not learn of until Travis's testimony at the first trial. The district court reopened the case on the narrow ground of trying the Halls' judicial estoppel claim.

Idaho Rule of Civil Procedure 59(a)(3) provides: "on a motion for new trial in an action tried without a jury, the court may open the judgment, if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." I.R.C.P. 59(a)(3). "Reopening a case to admit additional evidence is not analogous to granting a new trial." *Davison's Air Serv., Inc. v. Montierth*, 119 Idaho 967, 968, 812 P.2d 274, 275 (1991). Therefore, a trial court does not need to find an independent basis that would justify a new trial in order to reopen the matter prior to entering a final judgment. *Id.*

Here, the district court did not abuse its discretion in reopening the case. First, the district court perceived the issue as one of discretion, acknowledging that its choice to reopen the matter was discretionary. Second, the district court acted within the boundaries of its discretion, considering only those rules applicable to a motion to reopen under I.R.C.P. 59. While the district court acknowledged the Halls' motion for relief from judgment, it prudently denied that request because there was not a final judgment in the matter and instead applied the proper standard, I.R.C.P. 59. Third, the district court acted consistently with applicable legal standards in granting

11

the Halls' motion to reopen. As noted above, the district court applied I.R.C.P. 59(a)(3), reasoning that Travis's bankruptcy filings were new material evidence. The plain language of I.R.C.P. 59(a)(3) allows a trial court, following a bench trial, to reopen a matter to "take additional testimony" and "make new findings and conclusions." As such, the district court did not err in deciding to reopen the matter to take additional evidence relating to Travis's bankruptcy filings and consider the Halls' judicial estoppel claim. Lastly, the district court reached its decision by the exercise of reason, concluding that the Halls' judicial estoppel claim was likely viable, and that they had not learned of Travis's bankruptcy filings until the first trial, justifying reopening the case to consider the claim.

Travis's argument that the Halls should have discovered his bankruptcy filings earlier and asserted their judicial estoppel claim at the first trial is unavailing. Travis points to no evidence showing that the Halls were aware of his bankruptcy prior to his testimony at trial. To be sure, the Halls *could have* discovered Travis's bankruptcy filings prior to the first trial, but simply noting that a party could have discovered some information, without demonstrating why they would have a reason to do so, is not sufficient to demonstrate that the district court abused its discretion in reopening the case.

**C. Any error in the district court's choice of remedy is harmless.**

Travis argues that the district court inappropriately ordered Travis to execute a quitclaim deed to the property in his individual capacity and should have instead issued a clerk's deed to transfer title to the property. The Halls offer no response to this argument.

The district court ordered Travis to sign and execute a quitclaim deed to the Halls conveying his interest in the property. In addition, the district court provided that if Travis failed to deliver a quitclaim deed to the Halls within fourteen days after its decision, the district court would direct a clerk's deed to be issued. The district court's decision did not discuss whether the quitclaim deed would need to be executed by Travis in his individual capacity or in his capacity as personal representative of the Estate.

Idaho Rule of Civil Procedure 70(a) provides that "[i]f a judgment requires a party to . . . deliver a deed or other document . . . and the party fails to comply within the time specified, the court may order the act to be done . . . by another person appointed by the court." Idaho Rule of Civil Procedure 61 instructs that "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." I.R.C.P. 61. "A right is

12

substantial if it could affect the outcome of the litigation." *In re Estate of Hirning*, 167 Idaho 669, 677, 475 P.3d 1191, 1199 (2020).

We hold that any error in ordering Travis to sign and execute a quitclaim deed is harmless because it did not affect his substantial rights. Travis contends that the appropriate relief would have been to issue a clerk's deed. Idaho Rule Civil Procedure 70(a) confirms that issuing a clerk's deed is an available and appropriate remedy. The district court's order specifically provides for the alternate remedy of issuance of a clerk's deed. As such, the result of this matter remains the same. The property will be transferred to the Halls through a deed signed either by Travis or by the clerk.

**D. The Halls are not entitled to attorney fees on appeal.**

The Halls have requested attorney fees under Idaho Code section 12-121. They contend that Travis's appeal was frivolous as it merely asked this Court to second guess the district court's judgment.

Section 12-121 allows an award of attorney fees to a prevailing party where a case is "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. An award of attorney fees is appropriate if the appellant simply invites this Court to second-guess the trial court's determinations regarding conflicting evidence. *Downey v. Vavold*, 144 Idaho 592, 596, 166 P.3d 382, 386 (2007) (*citing Gustaves v. Gustaves*, 138 Idaho 64, 71, 57 P.3d 775, 782 (2002). However, attorney fees are not appropriate under section 12-121 where a novel legal issue is presented. *McCann v. McCann*, 152 Idaho 809, 823, 275 P.3d 824, 838 (2012). While the Halls prevailed on the lost deed doctrine, and we affirm the district court's judgment quieting title in their favor, the lost deed doctrine is an issue of first impression for this Court. As such, we decline to award attorney fees to the Halls under section 12-121. However, as the prevailing party on appeal, the Halls are awarded costs on appeal pursuant to I.A.R. 40.

## V. CONCLUSION

The judgment of the district court is affirmed. The district court properly concluded that the Halls had proved their ownership of the property under the lost deed doctrine. We decline to award attorney fees to the Halls. Costs on appeal are awarded to the Halls.

Chief Justice BEVAN and Justices BRODY, STEGNER and MOELLER **CONCUR**.